# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 6, 2011         Decided July 27, 2012

No. 11-5028

MICHAEL FRIEDMAN, ET AL.,
APPELLANTS

v.

KATHLEEN SEBELIUS, IN HER OFFICIAL CAPACITY AS
SECRETARY, DEPARTMENT OF HEALTH AND HUMAN SERVICES
AND DANIEL R. LEVINSON, IN HIS OFFICIAL CAPACITY AS
INSPECTOR GENERAL, DEPARTMENT OF HEALTH AND HUMAN
SERVICES,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-02028)

———

*Carter G. Phillips* argued the cause for appellants. With him on the briefs were *Matthew D. Krueger*, *Joseph R. Guerra*, *Anand H. Das*, *Jonathan L. Abram*, and *Jonathan L. Diesenhaus*.

*Lisa S. Blatt*, *Jeffrey L. Handwerker*, and *Dirk C. Phillips* were on the brief for *amicus curiae* Pharmaceutical Research and Manufacturers of America in support of appellants.

*Amar D. Sarwal* was on the brief for *amicus curiae* Association of Corporate Counsel in support of appellants.

*Michael A. Carvin*, *Daniel J. Popeo*, and *Richard A. Samp* were on the brief for *amicus curiae* Washington Legal Foundation in support of appellants.

*Robin M. Meriweather*, Assistant U.S. Attorney, argued the cause for appellees. With her on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: SENTELLE, *Chief Judge*, WILLIAMS and GINSBURG, *Senior Circuit Judges*.

Opinion for the Court by *Senior Circuit Judge* GINSBURG.

Opinion concurring in part, dissenting in part, and dissenting from the judgment filed by *Chief Judge* SENTELLE.

Opinion dissenting in part, concurring in part, and concurring in the judgment filed by *Senior Circuit Judge* WILLIAMS.

GINSBURG, *Senior Circuit Judge*: Michael Friedman, Paul Goldenheim, and Howard Udell were executives at the Purdue Frederick Company when it misbranded a drug, to wit, the painkiller OxyContin, a schedule II controlled substance. The Company was convicted of fraudulent misbranding, a felony, whilst the executives were convicted under the "responsible corporate officer" doctrine of the misdemeanor of misbranding a drug. Based upon their convictions, the Secretary of Health and Human Services later excluded the individuals from participation in Federal health

care programs for 12 years, pursuant to 42 U.S.C. § 1320a-7(b). They sought review of the Secretary's decision in the district court, arguing section 1320a-7(b) does not authorize their exclusion and, in any event, the Secretary's decision was unsupported by substantial evidence and was arbitrary and capricious because she failed to give a reasoned explanation for the allegedly unprecedented length of their exclusions. The district court granted summary judgment for the Secretary.

We hold the statute authorized the Secretary's exclusion of the three executives but her decision was arbitrary and capricious for want of a reasoned explanation for the length of their exclusions. We therefore reverse the judgment of the district court and direct it to remand the matter to the Secretary for further proceedings.

## I. Background

The Appellants were senior corporate officers at Purdue when the Company developed and marketed OxyContin. According to the Information initiating the criminal cases against the Appellants and the Company, the "misbranding" occurred when unnamed employees at Purdue, "with the intent to defraud or mislead, marketed and promoted OxyContin as less addictive, less subject to abuse and diversion, and less likely to cause tolerance and withdrawal than other pain medications." *United States v. Purdue Frederick Co.*, 495 F. Supp. 2d 569, 571 (W.D. Va. 2007). Purdue pleaded guilty to felony misbranding, in violation of 21 U.S.C. § 331(a) and § 333(a)(2). *Id.* at 570. Pursuant to the plea agreement, the district court put the Company on probation for five years, fined it $500,000, and imposed other monetary sanctions totaling approximately $600 million, of which approximately $160 million was earmarked for

restitution to Federal and State health care agencies, which had been large buyers of the misbranded drug. *Id.* at 572. At the same time, the Appellants pleaded guilty to misdemeanor misbranding, in violation of 21 U.S.C. § 331(a) and § 333(a)(1), for their admitted failure to prevent Purdue's fraudulent marketing of OxyContin; each was sentenced to do 400 hours of community service, fined $5,000, and put on probation for three years. The sentencing court also ordered the Appellants to disgorge compensation they had received from Purdue totaling approximately $34.5 million.

Under the "responsible corporate officer" (RCO) doctrine, a "corporate agent, through whose act, default, or omission the corporation committed a crime" in violation of the Food, Drug, and Cosmetic Act may be held criminally liable for the wrongdoing of the corporation "whether or not the crime required 'consciousness of wrongdoing'" by the agent. *United States v. Park*, 421 U.S. 658, 670 (1975). Criminal liability under the RCO doctrine extends "not only to those corporate agents who themselves committed the criminal act, but also to those who by virtue of their managerial positions or other similar relation to the actor could be deemed responsible for its commission." *Id.* A corporate officer may therefore be guilty of misdemeanor misbranding without "knowledge of, or personal participation in," the underlying fraudulent conduct. *Id.* The Appellants, as part of their plea agreements, admitted having "responsibility and authority either to prevent in the first instance or to promptly correct" the misrepresentations certain unnamed Purdue employees made regarding OxyContin and thereby, under the RCO doctrine, admitted being guilty of misdemeanor misbranding.

Several months after the Appellants had been convicted, the Office of the Inspector General (OIG) of the Department

5

of Health and Human Services determined the Appellants should be excluded from participation in Federal health care programs for 20 years, pursuant to 42 U.S.C. § 1320a-7(b)(1) and (3).[*] The OIG based the length of the Appellants' exclusion upon three aggravating factors listed in the Department's published regulations — the conduct underlying the convictions lasting more than one year, the amount of the financial loss, and the significant adverse physical or mental impact upon program beneficiaries. *See* 42 C.F.R. § 1001.201(b)(2)(i)–(iii); *id.* § 1001.401(c)(2)(i)–(ii).

The executives appealed the OIG's determination to an Administrative Law Judge and ultimately to the Departmental Appeals Board, to which the Secretary had delegated authority to review decisions to exclude an individual. During the pendency of the appeal to the ALJ, the OIG reduced the length of the exclusion to 15 years because the

---

[*] Section 1320a-7(b)(1)(a) authorizes the Secretary to exclude any "individual ... [who] has been convicted ... of a criminal offense consisting of a misdemeanor relating to fraud, theft, embezzlement, breach of fiduciary responsibility, or other financial misconduct ... in connection with the delivery of a health care item or service." Section 1320a-7(b)(3) authorizes the Secretary to exclude any "individual ... [who] has been convicted ... of a criminal offense consisting of a misdemeanor relating to the unlawful manufacture, distribution, prescription, or dispensing of a controlled substance." The length of an exclusion predicated upon a conviction for a misdemeanor "shall be 3 years, unless the Secretary determines in accordance with published regulations that a shorter period is appropriate because of mitigating circumstances or that a longer period is appropriate because of aggravating circumstances." 42 U.S.C. § 1320a-(7)(c)(3)(D). 42 C.F.R. § 1001.2 provides "items and services furnished, ordered, or prescribed by [an excluded person] will not be reimbursed under Medicare, Medicaid and all other Federal health care programs until [that person] is reinstated by the OIG."

6

Appellants had assisted law enforcement authorities to combat abuse of OxyContin, a mitigating factor. The ALJ affirmed the 15-year exclusion as being within a "reasonable range." The DAB affirmed that decision, interpreting the statute to authorize the exclusion of an individual convicted of a misdemeanor when the facts underlying that conviction have a "nexus or common sense connection" either to fraud or to the distribution of a controlled substance. The DAB found the Appellants' "misdemeanor misbranding offense" had the requisite connection to fraud because "[t]he actual misbranding that resulted in [their] conviction was the [Company's] fraudulent misbranding of OxyContin." The DAB further reduced the length of the exclusion to 12 years on the ground the "ALJ's finding that [the Appellants'] crimes had an adverse impact on program beneficiaries and others is not supported by substantial evidence" because there is no evidence the misbranded Oxycontin had any adverse effect.

The Appellants sought review in the district court, which held the statute authorized their exclusion because, "by its plain terms, section 1320a-7(b)(1) appears to permit the exclusion of anyone convicted of an offense 'having a connection with or reference to' fraud or financial misconduct in the delivery of a health care item or service." *Friedman v. Sebelius*, 755 F. Supp. 2d 98, 107–08 (D.D.C. 2010) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)).[*] The district court upheld the length of the exclusion because it concluded the DAB's application of the aggravating and mitigating factors was supported by substantial evidence. *Id.* at 117.

---

[*] Because we hold the exclusion was lawful under section (b)(1), we do not pass upon the parties' dispute over whether the Appellants could be excluded pursuant to section (b)(3).

## II. Analysis

We review the judgment of the district court de novo. *Se. Ala. Med. Ctr. v. Sebelius*, 572 F.3d 912, 916 (D.C. Cir. 2009) ("In reviewing HHS's actions on appeal from the district court, this court addresses the issue de novo, without deference to the decision of the district court" (internal quotation marks and citation omitted)). We are to uphold the Secretary's decision to exclude the Appellants if it was "based on substantial evidence in the record and correctly applie[d] the relevant legal standards." *Rosello v. Astrue*, 529 F.3d 1181, 1184 (D.C. Cir. 2008) (internal quotation marks and citation omitted); *see also* 42 U.S.C. § 1320a-7(f) (providing for review pursuant to 42 U.S.C. § 405(g) of the Secretary's decision to exclude an individual); *id.* § 405(g) ("The findings of the [Secretary of Health and Human Services] as to any fact, if supported by substantial evidence, shall be conclusive"). We will defer to the Secretary's reasonable interpretation of the statute she administers. *Sullivan v. Everhart*, 494 U.S. 83, 88–89 (1990) (applying *Chevron* deference in reviewing per § 405(g) Secretary's interpretation of the Social Security Act).

The Appellants contend section 1320a-7(b)(1) does not authorize their exclusion because misdemeanor misbranding is not a "misdemeanor relating to fraud." They also argue that, even if the statute authorizes their exclusion, the Secretary's decision to exclude them for 12 years was unsupported by substantial evidence and was arbitrary and capricious.

## A. Statutory Grounds for the Appellants' Exclusion

The Appellants first argue misdemeanor misbranding is not a "criminal offense consisting in a misdemeanor relating

to fraud" because it lacks the allegedly requisite "'generic' relationship to fraud." On their view, it is not enough for the conduct underlying a particular conviction to be factually related to fraud; the generic misdemeanor must comprise the "core elements" of fraud, one of which is *scienter*. Misdemeanor misbranding does not necessarily require a culpable mental state because a conviction for the offense may be, and in this case was, predicated upon the responsible corporate officer doctrine, which entails strict liability. The Secretary defends her interpretation by arguing that under the DAB's "'intuitive, ordinary reading' of the statute, [the Appellants'] convictions ... 'relate to' fraud or unlawful distribution of a controlled substance [because] there is a 'nexus' or 'common sense connection' between their convictions and those statutory bases for exclusion."

This case therefore presents the question whether the phrase "misdemeanor relating to fraud" in section 1320a-7(b)(1)(A) refers to a generic criminal offense or to the facts underlying the particular defendant's conviction. As the Supreme Court has pointed out, "in ordinary speech words such as 'crime,' 'felony,' 'offense,' and the like sometimes refer to a generic crime, say, the crime of fraud or theft in general, and sometimes refer to the specific acts in which an offender engaged on a specific occasion, say, *the* fraud that the defendant planned and executed last month." *Nijhawan v. Holder*, 557 U.S. 29, 33–34 (2009). The "categorical approach," according to which the statutory term refers to the generic criminal offense, "prohibits the later court from delving into particular facts disclosed by the record of conviction" and directs that court to "look only to the fact of conviction and the statutory definition of the prior offense," including the elements of that offense. *Shepard v. United States*, 544 U.S. 13, 17 (2005) (internal quotation marks and citation omitted). Under the "circumstance-specific"

approach, by contrast, the statutory term refers to the particular conduct giving rise to the conviction and so the court "must look to the facts and circumstances underlying an offender's conviction" to determine whether that conviction is covered by the statute. *Nijhawan*, 557 U.S. at 34. Whether the Congress intended the categorical or the circumstance-specific approach is to be discerned from the text, structure, and purpose of the particular statute at issue. *Compare Taylor v. United States*, 495 U.S. 575, 600–602 (1990) (applying "formal categorical approach" to phrase "any crime ... that ... is burglary" in statute providing for sentencing enhancement based upon defendant's prior convictions), *with Nijhawan*, 557 U.S. at 36 (applying circumstance-specific approach to phrase "fraud or deceit in which the loss to the victim or victims exceeds $10,000" in statute providing for deportation).

Although a reviewing court proceeding under section 405(g) generally defers to the Secretary's interpretation of an ambiguous provision of a statute she administers, *see Everhart*, 494 U.S. at 88–89, the Appellants argue her interpretation of section 1320a-7(b)(1)(A) in this case does not warrant deference: "Nothing in the exclusion statute evinces Congress' intent to empower the agency to 'speak with the force of law' ... when addressing ambiguities in the phrase[] 'misdemeanor relating to fraud.'" Brief at 20, quoting *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001). They contend the Congress did not delegate authority to interpret the phrase "misdemeanor relating to fraud" because that phrase is a term of art in criminal law and therefore outside the scope of the Secretary's subject-matter expertise and more suited to judicial interpretation.

Courts defer to an agency's interpretation of a law it administers only to the extent the Congress has delegated

interpretive authority to the agency. *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649 (1990).[*] With respect to section 1320a-7(b)(1), however, we need not decide whether the Congress authorized the Secretary "to speak with the force of law when [she] addresses ambiguity in the statute," *Mead Corp.*, 533 U.S. at 229, because the statute unambiguously authorizes her to exclude the Appellants. The text, structure, and purpose of the statute, *viz.,* to protect Federal health care programs from financial harm wrought by untrustworthy providers, all indicate the Secretary's circumstance-specific approach is proper; *i.e.*, the statute authorizes exclusion of an

---

[*] There appears to be a split in authority on the question whether to defer to an agency's interpretation of a term drawn from criminal law but used in a statute the agency administers. *Compare, e.g.*, *Wong Park v. Att'y Gen.*, 472 F.3d 66, 70 (3d Cir. 2006) ("[N]either the Attorney General nor the BIA ... is entitled to *Chevron* deference as to whether a particular federal offense is an aggravated felony [as that term appears in the Immigration and Naturalization Act]" (internal quotation marks and citation omitted)), *with James v. Mukasey*, 522 F.3d 250, 254 (2d Cir. 2008) ("we defer to the BIA's interpretation of [the INA] in determining the meaning of 'sexual abuse of a minor'" as it appears in the INA but not to its "interpret[ation] of state or federal criminal laws" themselves), *and Mugalli v. Ashcroft*, 258 F.3d 52, 56 (2d Cir. 2001) ("[W]e defer to the BIA's interpretation of [the INA] in determining the meaning of 'sexual abuse of a minor'"). In *Nijhawan* the Supreme Court, neither deferring nor mentioning the Government's argument for deferring to the BIA's interpretation of the INA, decided the term "fraud or deceit in which the loss to the victim or victims exceeds $10,000" calls for the circumstance-specific approach, 557 U.S. at 36, even though the Court had only recently made clear that, "[c]onsistent with the rule in *Chevron* ..., the BIA is entitled to deference in interpreting ambiguous provisions of the INA," *Negusie v. Holder*, 555 U.S. 511, 516 (2009) (denying *Chevron* deference where BIA decision was based upon "mistaken legal premise" regarding a prior decision of the Court).

individual whose conviction was for conduct factually related to fraud.

Section 1320a-7(b)(1)(A), 42 U.S.C. § 1320a-7(b)(1),[*] provides:

> (b) Permissive exclusion
> The Secretary may exclude ... from participation in any Federal health care program ...
>> (1) Conviction relating to fraud
>> Any individual or entity that has been convicted ...
>>> (A) of a criminal offense consisting of a misdemeanor relating to fraud, theft, embezzlement, breach of fiduciary responsibility, or other financial misconduct ....

The key phrase in this provision is "relating to," the "ordinary meaning of [which] is a broad one — 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" *Morales*, 504 U.S. at 383 (quoting BLACK'S LAW DICTIONARY 1158 (5th ed. 1979)); *see also Metropolitan Life Ins. Co. v. Mass.*, 471 U.S. 724, 739 (1985) ("The phrase 'relate to' [has a] broad common-sense meaning" and a statutory provision containing the phrase therefore has "broad scope"). Accordingly, just as the Secretary contends, a misdemeanor "relat[es] to" fraud "in the normal sense of the phrase, if it has a connection with, or reference to" fraud, *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990). The established meaning of these "deliberately expansive" words, *Pilot Life*

---

[*] The full text of the relevant sections of the permissive exclusion statute, 42 U.S.C. § 1320a-7(b)(1)–(3), is set out in the Appendix.

*Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987), is therefore at odds with the Appellants' crabbed and formalistic interpretation. Rather than referring only to generic misdemeanor offenses that share all the "core elements" of fraud, the capacious phrase includes any criminal conduct that has a factual "connection with" fraud. *Cf. Morales*, 504 U.S. at 388–89 ("compelling or restricting '[p]rice advertising surely 'relates to' price'" because "it is clear as an economic matter that state restrictions on fare advertising have the forbidden significant effect upon fares" (citation omitted)).

The rest of section 1320a-7(b)(1)(A) confirms its broad scope. It authorizes the Secretary to exclude not only a person convicted of "a criminal offense consisting of a misdemeanor relating to fraud" but also one convicted of "a criminal offense consisting of a misdemeanor relating to ... theft, embezzlement, breach of fiduciary duty, or other financial misconduct." The residual clause "other financial misconduct" expressly refers to a type of "conduct," not to a genus of criminal offense. The relationship of a "misdemeanor" to "other financial misconduct" must therefore be a factual one. The term "misdemeanor" accordingly refers to the particular circumstances of an individual's conviction, and "relating to" must denote a factual relationship between the conduct underlying the misdemeanor and the conduct underlying a "fraud."

The heading of section 1320a-7(b)(1) ("Conviction relating to fraud") further supports this reading of the provision. "Although the title of a statute and the heading of a section cannot limit the plain meaning of the text, they remain tools available for the resolution of a doubt about statutory meaning." *Hays v. Sebelius* 589 F.3d 1279, 1282 (D.C. Cir. 2009) (internal quotation marks and citation omitted); *see also INS v. Nat'l Ctr. for Immigrants' Rights,*

*Inc*., 502 U.S. 183, 189 (1991) ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text" (citations omitted)).  In the heading to section 1320a-7(b)(1) as enacted, "relating to fraud" modifies "[c]onviction."  *See* Medicare and Medicaid Patient Program Protection Act of 1987, Pub. L. No. 100-93, 101 Stat. 680 (1987) (codified at 42 U.S.C. § 1320a-7).  In the provision itself, of course, "relating to fraud" modifies "misdemeanor."  Thus, we see the Congress used "conviction" and "misdemeanor" interchangeably, and a "conviction," is, of course, a particular event on a particular occasion and so refers to a set of facts, and not to a generic crime.  Hence, the parallel between the heading of section 1320a-7(b)(1) and the text of section 1320a-7(b)(1)(A) implies the word "misdemeanor" also refers to the facts underlying a particular conviction.

The text and structure of the provisions adjoining section 1320a-7(b)(1)(A) further confirm this interpretation.  In both section (b)(1)(B) and section (b)(2), the phrase "relating to" denotes a factual relationship.  The former provision authorizes the Secretary to exclude a person convicted of "a criminal offense relating to fraud ... with respect to any act or omission in a program (other than a health care program) operated by or financed in whole or in part by any Federal, State, or local government agency."  The phrase "fraud ... with respect to any act or omission in a program" does not refer to a generic offense but rather to criminal conduct that, as a matter of fact, relates to a program financed by a government agency.  Addressing an analogous phrase in an immigration statute providing for deportation, the Supreme Court explained:

> [The phrase] "falsely making, forging, counterfeiting, mutilating, or altering a passport ... *except in the case*

> *of a first offense for which the alien ... committed the offense for the purpose of assisting ... the alien's spouse, child, or parent*" ... cannot possibly refer to a generic crime. That is because there is no such generic crime; there is no criminal statute that contains any such exception. Thus if the provision is to have any meaning at all, the exception must refer to the particular circumstances in which an offender committed the crime on a particular occasion.

*Nijhawan*, 557 U.S. at 37–38 (quoting 8 U.S.C. § 1101(a)(43)(P)).

Like the exception in the immigration statute analyzed in *Nijhawan*, the limiting clause in section (b)(1)(B) does not pick out a generic class of offenses because there is no generic crime of defrauding a program other than a health care program financed in whole or in part by a government agency. Again like the exception in the immigration statute, the limiting clause in section (b)(1)(B), therefore, restricts the scope of the named offense – fraud – to frauds committed in certain factual circumstances. It follows that the "criminal offense" listed in section (b)(1)(B) must "relat[e] to fraud" because it has a factual relationship to conduct committed on a particular occasion.

Section 1320a-7(b)(2)(ii) similarly authorizes the Secretary to exclude from participation in Federal health care programs any individual "convicted ... in connection with the interference with or obstruction of any investigation or audit related to ... the use of funds received ... from any Federal health care program." The phrase "the use of funds" does not refer to a generic offense and therefore must refer to specific facts on a particular occasion. As a result, "related to" in this provision denotes a factual connection between an

"investigation or audit" and "the use of funds." It is simply implausible that the Congress used "relating to" in section 1320a-7(b)(1)(B) and the functionally identical phrase "related to" in section 1320a-7(b)(2) to denote a relationship between factual situations but used the same phrase in section 1320a-7(b)(1) to denote a relationship between generic offenses. The only reasonable interpretation is that in all three provisions the phrases refer to a factual relationship. *See Mohamad v. Rajoub*, 634 F.3d 604, 608 (D.C. Cir. 2011) ("the same word[s] appearing in different portions of a single provision or act [are] taken to have the same meaning in each appearance" (internal quotation marks and citation omitted)).

The Appellants offer several arguments for a contrary reading. First, they argue applying the circumstance-specific approach gives no separate meaning to the phrase "relating to" in section (b)(1)(A) and the phrase "in connection with" in sections (b)(1)(A)(i) and (b)(2). According to the Appellants, because "in connection with" denotes a factual relationship between the conviction and "the delivery of a health care item or service" in section (b)(1)(A)(i) and between the conviction and "the interference with or obstruction of any investigation or audit" in section (b)(2), "relating to" in section (b)(1)(A) must denote a generic, not a factual relationship. The Appellant's interpretation of section (b)(1)(A)(i) ("misdemeanor relating to fraud ... in connection with the delivery of a health care service or item") is implausible. Under that interpretation, "fraud" would refer in section (b)(1)(A) to a generic criminal offense, to which the "misdemeanor" must "relat[e]" generically, but the same appearance of the same word would refer in section (b)(1)(A)(i) to the facts underlying the defendant's conviction, to which the delivery of a health care item or service must be "connect[ed]" factually. An interpretation that requires a single instance of a single word to carry two different

meanings in two consecutive clauses of a single sentence simply cannot stand. Far more plausible is the Secretary's reading that the Congress used "relating to" and "in connection with" each to denote a factual relationship – respectively, the relationship between the facts underlying a person's conviction and conduct that would qualify as "fraud"; and the relationship between that conduct and the delivery of health care. The use of the phrases "relating to" and "in connection with," therefore does not imply "relating to" must denote a non-factual, generic relationship.[*]

Next, the Appellants analogize the text of section (b)(1)(A) to a provision of the Immigration and Naturalization Act which authorized the deportation of an alien "convicted of a violation of ... any law or regulation relating to the possession of or traffic in narcotic drugs." 8 U.S.C. § 1227(a)(b)(i) (1976). The Appellants, citing *Castaneda de Esper v. INS*, 557 F.2d 79 (6th Cir. 1977), contend the Congress "used a verbal formulation – 'relating to [specified offenses]' – that had long been used in the INA, and already had a settled meaning" denoting a generic, non-factual relationship. The Secretary effectively counters that "relating to" in the INA has no such settled meaning, contrasting *Castaneda*, which held a conviction for misprision is not a violation of a law "relating to the illicit possession of or traffic in narcotic drugs" because misprision is "a criminal offense separate and distinct from the particular felony

---

[*] The Appellants also make passing reference to the legislative history of the exclusion statute, which they claim "draws a clear distinction between the generic relationship that the misdemeanor must have to fraud, and the circumstance-specific relationship that the conviction must have to a health-care related item, service, or program," but the quoted snippets of that history merely repeat the text of the statute and therefore cast no light upon its proper interpretation.

concealed," 557 F.2d at 83, with *Urena-Ramirez v. Ashcroft*, 341 F.3d 51 (1st Cir. 2003), which held the defendant's violation of the Travel Act was a "violation of ... any law or regulation ... relating to a controlled substance" because the "conduct underlying the proscribed travel ... was tantamount to aiding and abetting the distribution of narcotics," *id.* at 54–55, 57. *See also Johnson v. INS*, 971 F.2d 340, 342–43 (9th Cir. 1992) (holding defendant's violation of the Travel Act was "violation of ... any law or regulation ... relating to a controlled substance" because the "criminal conduct involved narcotics and controlled substances").

Moreover, we note the wording of the INA supports the application of the categorical approach much more readily than does the text of section (b)(1)(A). The Appellants err by focusing narrowly upon the phrase "relating to" in the INA, paying no heed to the words connected by that phrase — "law or regulation" and "the possession of or traffic in narcotic drugs." A "law or regulation," unlike a "misdemeanor," cannot refer to the facts of a particular incident.

The Appellants also argue the circumstance-specific approach leads to an "absurd result," to wit: "Individuals who negligently submit false or fraudulent claims ... are not subject to exclusion under [42 U.S.C. § 1320a-7a(a)]" whereas, under the Secretary's approach to section 1320a-7(b), one "who pleads guilty of a strict liability misdemeanor offense that requires no proof of conscious wrongdoing, fraud, or falsehoods is excludable based on misconduct by others that he had no knowledge of." Viewed in context, however, there is no absurdity. Section 1320a-7a(a) gives the Secretary discretion whether to exclude the individual from participation in Federal health care programs but makes a fine mandatory. The statute at issue here similarly authorizes exclusion but neither requires nor authorizes a fine; for a

lesser penalty, a lesser *mens rea* requirement, or indeed no *mens rea* requirement at all, is not illogical.

Finally, the Appellants and their amici argue, because the Secretary's interpretation permits her to impose "career-ending disabilities" upon someone whose criminal conviction required no *mens rea*, it raises a serious question of validity under the Due Process Clause of the Fifth Amendment to the Constitution of the United States. Quoting *Morrisette v. United States*, 342 U.S. 246, 256 (1952), they note the Supreme Court upheld the constitutionality of strict liability crimes "in part, because their associated penalties 'commonly are relatively small, and conviction does no grave damage to an offender's reputation.'" Section 1320a-7(b)(1), however, is not a criminal statute and, although exclusion may indeed have serious consequences, we do not think excluding an individual under 42 U.S.C. § 1320a-7(b) on the basis of his conviction for a strict liability offense raises any significant concern with due process. Exclusion effectively prohibits one from working for a government contractor or supplier. Surely the Government constitutionally may refuse to deal further with senior corporate officers who could have but failed to prevent a fraud against the Government on their watch.

For the foregoing reasons, we hold section 1320a-7(b)(1)(A) authorizes the Secretary to exclude from participation in Federal health care programs an individual convicted of a misdemeanor if the conduct underlying that conviction is factually related to fraud. The Appellants do not dispute they are excludable under this circumstance-specific approach: Their convictions for misdemeanor misbranding were predicated upon the company they led having pleaded guilty to fraudulently misbranding a drug and they admitted having "responsibility and authority either to prevent in the first instance or to promptly correct" that fraud; they did

neither.[*]   Accordingly, section 1320a-7(b)(1)(A) authorized the Secretary to exclude them for a time from participation in Federal health care programs.

---

[*] JUDGE WILLIAMS objects (at pages 4–5 of his opinion) that the interpretation of section 1320a-7(b) proposed by the Secretary and adopted by the Court does not "articulate" the type or limit of the factual relationships sufficient to support an individual's exclusion. This objection is misplaced for two reasons.  First, as explained above, the Appellants do not dispute they are subject to exclusion under the circumstance-specific approach; they argue only that the categorical approach applies.  They never raised, either before the district court or before this court, an argument of the sort advanced by Judge Williams; any such argument is therefore not properly before the Court.  *See Benoit v. Dep't of Agric.*, 608 F.3d 17, 21 (D.C. Cir. 2010) (arguments not raised in district court are forfeit). Second, there is nothing unusual or improper in a court adopting an interpretation of a statute that does not settle every case that might arise in the future.  *See, e.g.*, *Morales*, 504 U.S. at 390 (declining to decide whether "nonprice aspects of fare advertising ... 'relat[e] to' rates," regarding which "the connection would obviously be far more tenuous. ...  '[T]he present litigation plainly does not present a borderline question, and we express no views about where it would be appropriate to draw the line.'" (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21 (1983))).  If there is ever a case of the sort that concerns Judge Williams — one in which the Secretary excludes a person based upon the view that "virtually any overlap between the facts required for fraud and those involved in (or required for) the offense of conviction is enough," (Opinion of Williams, J., at 3) — then the court shall at that time have the occasion and the duty to resolve that issue.  The Appellants' convictions under the responsible corporate officer doctrine, however, were manifestly "related to" a fraud.  So too would be a conviction for other respondeat superior criminal offenses, attempted fraud, conspiracy to commit fraud, and the like — no one of which need share all the "core elements" of fraud.

B. Length of the Appellants' Exclusion

The Appellants also challenge the Secretary's decision to exclude them for fully 12 years, four times as long as the presumptive baseline in the statute: "the period of exclusion shall be 3 years" unless the Secretary adjusts the length of exclusion on the basis of aggravating or mitigating factors "in accordance with published regulations." 42 U.S.C. § 1320a-7(c)(3)(D). The Appellants argue the Secretary took into account two aggravating factors for which there was not substantial evidence, failed to take into account one mitigating factor without substantial evidence for so doing, and gave them too little credit with respect to a second mitigating factor. They also argue the Secretary erred by failing to reconcile the length of their exclusion with the agency's prior decisions.

1. Aggravating and mitigating factors

First the Appellants claim the Secretary improperly applied the aggravating factor of their being responsible for a financial loss in excess of $5,000 because, they allege, there is no evidence in the record of any actual financial loss. The pertinent regulation establishes an aggravating factor when "[t]he acts resulting in the conviction ... caused ... a financial loss of $5,000 or more to a Government program or to one or more other entities, or had a significant financial impact on program beneficiaries or other individuals." 42 C.F.R. § 1001.201(b)(2)(i). The Appellants' argument is frivolous. They admitted responsibility for a crime, misdemeanor misbranding, that caused, at least in part, financial losses for which Purdue paid $160 million in "restitution." Specifically, Purdue falsely portrayed OxyContin to be less addictive, less subject to abuse and diversion, and less likely to cause tolerance and withdrawal than other painkillers on the market,

which misrepresentation certainly led some doctors to prescribe it when they would otherwise have prescribed a different painkiller or none at all. Purdue had almost $3 billion in revenues from OxyContin during the time it misbranded the drug, much of it from Federal and state health care programs which paid for prescriptions for OxyContin, some of which would not have been written but for the misbranding. Even if the amount of restitution to which Purdue agreed was the product of a negotiation unbounded by forensic accounting, as the Appellants claim, their suggestion the losses they caused did not exceed a mere $5,000 is preposterous. Accordingly, the Secretary's application of this aggravating factor was supported by substantial evidence.

Second, the Appellants argue the same regulation, and another which establishes an aggravating factor based upon the duration of the excluded person's criminal conduct, refer only to "acts" whereas the Appellants' violations consisted solely of omissions. *See* 42 C.F.R. § 1001.201(b)(2)(i) ("The acts resulting in the conviction ... caused ... a financial loss"); *id.* at § 1001.201(b)(2)(ii) ("The acts that resulted in the conviction ... were committed over a period of one year or more"). The Secretary replies the "regulatory phrase 'acts that resulted in the conviction' is used to describe the wrongful conduct considered when setting an appropriate exclusion period." As the Appellants point out, however, the regulations elsewhere distinguish between "acts" and "omissions," *see* 42 C.F.R. § 1001.201(a)(1)(ii) ("With respect to any act or omission in a health care program ...."). Still, nothing turns upon the distinction where it is made, and in light of the deference due the Secretary's interpretation of her own regulation, *see Auer v. Robbins*, 519 U.S. 452, 461 (1997), we conclude her interpretation equating the two terms when only "acts" are proscribed is a permissible one.

Third, the Appellants argue the Secretary erred in failing to take into account their lack of "conscious wrongdoing." The pertinent regulation establishes as a mitigating factor "that the individual has a mental, physical, or emotional condition ... that reduced the individual's culpability." 42 C.F.R. § 1001.201(b)(3)(ii). The Appellants argue their "lack of any awareness of wrongdoing" is one such "mental condition," and the Secretary therefore erred in failing to give them credit for this mitigating factor. The regulation plainly refers to mental, physical, or emotional illness or disability, and the Appellants have not alleged they are afflicted by any such condition. Accordingly, the Secretary's decision not to apply this mitigating factor is supported by substantial evidence.

Fourth, the Appellants argue the Secretary gave insufficient weight to their cooperation with law enforcement agencies, notwithstanding that she reduced the period of their exclusion by five years for this reason. Determining the precise weight to be given an aggravating or mitigating factor in setting the period of an exclusion is within the Secretary's discretion, which the Appellants have not shown she abused.

2. Departure from precedent: Review under the arbitrary and capricious standard?

We turn finally to the Appellants' only substantial objection: That the Secretary failed to justify the length of their exclusion in light of the agency's prior decisions, as required by the Administrative Procedure Act. *See Ramaprakash v. FAA*, 346 F.3d 1121, 1125 (D.C. Cir. 2003) ("An agency's failure to come to grips with [its] conflicting precedent constitutes an inexcusable departure from the essential requirement of reasoned decision making" (internal quotation marks and citation omitted)).

The Secretary claims she was not required to do so because the APA is not applicable to the decision under review; as we explained in *National Kidney Patients Association v. Sullivan*, 958 F.2d 1127, 1130 (D.C. Cir. 1992), "Section 405(h) [of 42 U.S.C.] ... makes [42 U.S.C.] § 405(g) the *exclusive* avenue for judicial review of administrative decisions," and review under section 405(g), according to the Secretary, precludes application of the APA.

The APA provides a "[s]ubsequent statute may not be held to supersede or modify [the APA] except to the extent that it does so expressly." 5 U.S.C. § 559. The exclusion statute, including section 1320a-7(f)(1), postdates the APA but section 405(g) predates it; therefore it is not immediately clear whether the limitation in section 559 — and therefore the APA — applies here. Regardless whether we look to section 1320a-7(f)(1) or to section 405(g), however, we agree with the Appellants that the statute authorizes review under the arbitrary and capricious standard.

Section 1320a-7(f)(1) does not expressly purport to supersede the APA and therefore does not preclude review under the arbitrary and capricious standard of the APA. The Secretary would instead have us focus upon section 405(g), which section 1320a-7(f)(1) incorporates by reference and which, because it predates the APA, need not "expressly" purport to supersede the APA in order to provide the exclusive standard for our review. Looking to section 405(g), however, we see the pertinent provision is virtually identical to the corresponding provision in the National Labor Relations Act. *Compare* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"), *with* 29 U.S.C. § 160(e) ("The findings of the [National Labor

Relations Board] with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive"). Neither statute expressly calls for any review other than review of findings of fact for substantial evidence. The Supreme Court has nonetheless construed the NLRA to incorporate review under the arbitrary and capricious standard of the APA. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)*; Linden Lumber Div., Summer & Co. v. NLRB*, 419 U.S. 301, 309–10 (1974); *see also Diamond Walnut Growers, Inc. v. NLRB*, 113 F.3d 1259, 1266 (D.C. Cir. 1997) (en banc). Considering that section 405(g), like section 160(e) of the NLRA, is silent regarding the standard of review except with regard to questions of fact, we see no reason to depart from the path indicated by the Supreme Court. We therefore review the Secretary's decision to exclude the Appellants according to the arbitrary and capricious standard, which requires that the Secretary provide a reasoned explanation for departing from agency precedent.

3. Applying the arbitrary and capricious standard of review

The Appellants may overstate their case by claiming their 12-year exclusion is "unprecedented"; the DAB cited a number of prior decisions in which it had excluded individuals for more than 10 years. The DAB's mere citation of these cases, however, does not stand as a reasoned explanation if, as the Appellants argue, those cases are materially different. And so it seems they are: As the Appellants point out, every one of the cases cited by the DAB involved a mandatory exclusion with a presumptive baseline of five years, not a discretionary exclusion with a presumptive baseline of three years; in addition, every cited case involved either a felony conviction or a conviction for Medicare fraud for which the defendant was incarcerated, none of which

25

factors is present in this case.[*] In fact, none of the cases cited by the DAB even concerned an exclusion under section

---

[*] *See Marcia C. Smith a/k/a Marcia Ellison Smith*, DAB No. 2046 (2006) (12-year exclusion: mandatory five-year exclusion for a conviction resulting in incarceration, plus three aggravating factors and no mitigating factors); *Russell Mark Posner*, DAB No. 2033 (2006) (14-year exclusion: mandatory five-year exclusion for three felony convictions resulting in incarceration, plus three aggravating factors and no mitigating factors); *Stacy R. Gale*, DAB No. 1941 (2004) (15-year exclusion: mandatory five-year exclusion for conviction resulting in incarceration, plus three aggravating factors and no mitigating factors); *Jeremy Robinson*, DAB No. 1905 (2004) (15-year exclusion: mandatory five-year exclusion for felony conviction resulting in incarceration, plus three aggravating factors and no mitigating factors); *Thomas D. Harris*, DAB No. 1881 (2003) (15-year exclusion: mandatory five-year exclusion for felony conviction resulting in deferred incarceration, plus two aggravating factors and no mitigating factors); *Stacy Ann Battle, D.D.S.*, DAB No. 1843 (2002) (10-year exclusion: mandatory five-year exclusion for conviction for Medicare fraud resulting in incarceration, plus three aggravating factors and no mitigating factors); *Joann Fletcher Cash*, DAB No. 1725 (2000) (15-year exclusion: mandatory five-year for conviction for Medicare fraud resulting in incarceration, plus three aggravating factors and no mitigating factors); *see also* (cases not cited by the DAB) *John D. Strom*, DAB No. CR 1056 (2003) (15-year exclusion: mandatory five-year exclusion for felony conviction resulting in incarceration, plus three aggravating factors and no mitigating factors); *Natawadee Steinhouse, M.D.*, DAB No. CR 859 (2002) (15-year exclusion: mandatory five-year exclusion for felony convictions resulting in incarceration, plus four aggravating factors and one mitigating factor); *Ruth Ferguson*, DAB No. CR 725 (2000) (15-year exclusion: mandatory five-year exclusion for conviction for Medicare fraud resulting in incarceration, plus three aggravating factors and no mitigating factors); *Gregory D. Wells, M.D.*, DAB No. CR 723 (2000) (15-year exclusion: mandatory five-year exclusion for conviction for Medicare fraud by offender with prior

1320a-7(b)(1); it appears the Secretary has never excluded anyone for more than ten years under that provision of the statute. Research reveals the longest period of exclusion the DAB had ever approved under section 1320a-7(b)(1) was four years. *See Paulette White Jackson*, DAB No. 1915 (2004); *Roberto Kutcher-Olivio*, DAB No. 1837 (2002). When the DAB affirmed the Appellants' 12-year exclusion the agency had never excluded anyone for more than ten years based upon a misdemeanor — a departure the agency does not even acknowledge, much less explain.

We do not suggest the Appellant's exclusion for 12 years based upon a conviction for misdemeanor misbranding might not be justifiable; we express no opinion on that question. Our concern here is that the DAB did not justify it in the decision under review. Simply pointing to prior cases with the same bottom line but arising under a different law and involving materially different facts does not provide a reasoned explanation for the agency's apparent departure from precedent. Therefore we hold the decision of the DAB was arbitrary and capricious with respect to the length of the Appellants' exclusion.

## III. Conclusion

For the reasons set out above, we hold section 1320a-7(b)(1) authorizes the exclusion of the Appellants on the basis of their convictions for misdemeanor misbranding. The Secretary's decision, however, was arbitrary and capricious with respect to the length of their exclusion because it failed to explain its departure from the agency's own precedents. The judgment of the district court is therefore reversed and

---

record of criminal and administrative sanctions, plus three aggravating factors and no mitigating factors).

the matter shall be remanded to the district court with instructions to remand it to the agency for further consideration consistent with this opinion.

*So ordered.*

Appendix

42 U.S.C. § 1320a-7(b)(1)–(3)

(b) Permissive exclusion
The Secretary may exclude the following individuals and entities from participation in any Federal health care program (as defined in section 1320a-7b(f) of this title):

(1) Conviction relating to fraud
Any individual or entity that has been convicted for an offense which occurred after August 21, 1996, under Federal or State law—

> (A) of a criminal offense consisting of a misdemeanor relating to fraud, theft, embezzlement, breach of fiduciary responsibility, or other financial misconduct—

>> (i) in connection with the delivery of a health care item or service, or

>> (ii) with respect to any act or omission in a health care program (other than those specifically described in subsection (a)(1) of this section) operated by or financed in whole or in part by any Federal, State, or local government agency; or

(B) of a criminal offense relating to fraud, theft, embezzlement, breach of fiduciary responsibility, or other financial misconduct with respect to any act or omission in a program (other than a health care program) operated by or financed in whole or in part by any Federal, State, or local government agency.

(2) Conviction relating to obstruction of an investigation or audit

Any individual or entity that has been convicted, under Federal or State law, in connection with the interference with or obstruction of any investigation or audit related to—

(i) any offense described in paragraph (1) or in subsection (a); or

(ii) the use of funds received, directly or indirectly, from any Federal health care program (as defined in section 1320a-7b(f) of this title).

(3) Misdemeanor conviction relating to controlled substance

Any individual or entity that has been convicted, under Federal or State law, of a criminal offense consisting of a misdemeanor relating to the unlawful manufacture, distribution, prescription, or dispensing of a controlled substance.

SENTELLE, *Chief Judge*, concurring in part and dissenting part and dissenting in the judgment: At the outset, I have no quarrel with the majority's decision that the statute authorized the Secretary's exclusion of the three executives, and I will not re-hash the factual background of the case or the reasoning leading to that conclusion. I do, however, dissent from the majority's reversal of the Secretary's decision on the length of the assigned exclusions.

Anyone engaged in the practice of appellate law, especially on the administrative side, knows that the standard of review may be determinative of an appellate proceeding. Because the majority today applies the wrong standard of review, it reaches an incorrect result. As the majority acknowledges, Congress has provided for review of an exclusion such as those under review here by specific statutory provision: 42 U.S.C. § 1320a-7(f). That section provides for "judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title . . . ." Section 405(g), made applicable to the exclusions by § 1320a-7(f), does not authorize review by "arbitrary and capricious" or "abuse of discretion" standards. *See Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Under the limited review afforded by § 405(g), we are to affirm the decision of the Departmental Appeals Board so long as it was "based on substantial evidence in the record and correctly applies the relevant legal standards." *Rossello v. Astrue*, 529 F.3d 1181, 1184 (D.C. Cir. 2008). The majority points to no finding lacking substantial evidentiary support and no departure from law. Therefore, the statute should compel a result affirming the Board, as was entered by the district court. That should leave us no avenue but affirmance of the district court.

I am concerned about the further implications of the majority's expansion of § 405(g) review. That section governs review of the final decisions of the Commissioner of Social

2

Security.  While not a part of our daily fare, such decisions, especially in the case of disability claims, commonly come before the courts of the United States.  The total number of disability claims, supplemental security income claims, retirement and survivor benefit claims, and other claims governed by § 405(g) reached 15,705 in the calendar year 2011.  Administrative Office of the U.S. Courts, Judicial Business of the U.S. Courts (2012), *available at http://www.uscourts.gov/statistics/JudicialBusiness.aspx* (Table C-10).  It is not surprising that Congress would dictate a confined standard of review for claims so numerous and so committed to a single agency.  By expanding the applicable standard of review in the present application of § 405(g), we invite unanticipated consequences in the application of this erroneous precedent to Social Security claims.

For the reasons set forth above, I respectfully dissent.  I would affirm.

WILLIAMS, *Senior Circuit Judge*, dissenting in part, concurring in part, and concurring in the judgment: I cannot agree that the Secretary's interpretation of 42 U.S.C. § 1320a-7(b) is valid, and accordingly would remand the case to the district court for remand to her for a permissible interpretation. If her action is valid on its own terms, however, as the court holds, I agree on the remand for the purposes stated by Judge Ginsburg—for the Secretary to explain the departure from prior precedents in fixing the terms of exclusion.

As the panel correctly notes, the appellants argue that the clause requires a "'generic' relationship to fraud," Maj. Op. at 7-8, or, as a practical matter, that convictions triggering a sanction based on the "fraud" element of § 1320a-7(b)(1) must have been based on findings of all the regular elements of the traditional crime of fraud. Most notably, they argue, scienter must have been an element of the crime—an element conspicuously missing from appellants' convictions, which depended on the "responsible corporate officer" doctrine. The Secretary argues instead for a "circumstance-specific" approach, *id.* at 8-9, which, as she explains, means that the "relation" requirement is satisfied if there is a "nexus or common sense connection between . . . the conduct giving rise to the offense and the fraud in connection with the delivery of the health care item or service." *Goldenheim v. Inspector General*, Dec. No. CR1883, 2009 WL 1176331 (HHS Dept. App. Bd. Jan. 9, 2009), Joint Appendix ("J.A.") 590; see also Appellees' Br. 22-23.

The court upholds the Secretary's view, evidently finding it "unambiguously" supported by the statute regardless of whether *Chevron v. Natural Resources Defense Council*, 467 U.S. 837 (1984), applies. See Maj. Op. at 10; see also *id.* at

18-19.   The court quite correctly notes that the phrase "relating to" is extraordinarily broad, quoting dictionary paraphrases such as "to stand in some relation." *Id*. at 11.  In fact a "relationship" can be one of hostility or enmity, or can be orthogonal, so that for a literalist the statute is virtually meaningless.  Taken literally, the provision does not even ask for a "substantial relationship" or a "close relationship"; it calls only for a "relationship," however attenuated.  Happily, the parties in fact appear to agree on narrowing the field a little, both assuming that the relationship must be one of overlap between the crime of fraud and the facts shown (or necessary to be shown[1]) in appellants' conviction of misdemeanor misbranding.  Indeed, the context compels that narrowing of the range—and more.

Appellants state what they view as the required overlap fairly clearly:  just as common law fraud requires a showing of scienter, the crime of conviction must have required proof of such an element.  The Secretary's idea of the necessary

---

[1] This situation is somewhat analogous to the provisions of the sentencing guidelines governing "career offenders," which provide for a heightened sentence if a defendant has previously committed a "crime of violence"—the definition of which term requires that the previous crime have *as an element* the "use, attempted use, or threatened use of physical force against the person of another." U.S. SENTENCING GUIDELINES § 4B1.1; *id*. § 4B1.2.  Compare with *id*. § 4B1.5(b) (sentencing enhancement where "defendant engaged in a pattern of activity involving prohibited sexual conduct" even if that conduct was not an element of previous convictions or was established by previous convictions); *United States v. Phillips*, 431 F.3d 86, 90 (2d Cir. 2005).  We need not consider whether evidence of scienter, even evidence beyond a reasonable doubt, would be sufficient in the case of a crime not requiring proof of scienter; the government does not remotely suggest scienter could be proven.

overlap is more free-floating—some sort of "nexus" between the convictions and fraud (or the other bases for exclusion).

But even this free-floating overlap (if it is to have any boundaries at all) requires some *concept* of "fraud, theft, embezzlement . . . or other financial misconduct." Suppose, for example, that the Secretary was acting under the last and vaguest of these terms, and the individuals had been convicted of filing false environmental reports. To prevail, the Secretary surely would have to offer a concept of financial misconduct that embraced such filings. One can talk of "circumstance-specific" relationships till one is blue in the face, but in the end deciding whether the necessary overlap exists requires a definition (or at least an idea) of the types of conviction triggering § 1320a-7(b)(1)(A). The conceptual battle cannot be avoided.

The parties' somewhat synthetic battle between "generic fraud" and the "circumstance-specific" approach leads the court into an extensive showing that the statute is laced with requirements that in the end will require burrowing into facts. See Maj. Op. at 11-15. The court argues that a statute rife with such intellectual exercises is not very likely to have clearly limited the Secretary to "generic fraud" for the fraud aspect of § 1320-7(b)(1)(A). But the sense of all those "factual relationships" depends on conceptual relationships— exemplified in the question whether the "financial misconduct" criterion would allow exclusion for a conviction for false environmental filings. If the Secretary's view is correct, virtually any overlap between the facts required for fraud and those involved in (or required for) the offense of conviction is enough.

The *meaning* of a statute must not be confused with its simple linguistic potential. As we've seen, the linguistic potential of crime or "misdemeanor relating to fraud" is

4

almost infinite. The Secretary, though on common ground with appellants in understanding that the relation must be one of overlap, purports to see no other limit. But this is not the way lawyers read a statute. They put it into context. Here the context suggests a requirement of at least some approximation of the moral turpitude associated with "fraud" itself. Thus Justice Cardozo, construing § 9(c) of the National Recovery Act in *Panama Refining Co. v. Ryan*, 293 U.S. 388, 433 (1935), acknowledged that § 9(c) alone was inadequate to supply an intelligible answer to the question of when the President was to exercise the delegated power to interrupt interstate oil transportation, but he went on to examine the statute as a whole and concluded that the power could be exercised only for "hot oil," i.e., oil produced in excess of statutory quotas. *Id*. at 435-46. Thus the context compelled a non-literal, relatively narrow interpretation. For similar context-based narrowings, see, e.g., *Owens v. Republic of Sudan*, 531 F.3d 884, 893 (D.C. Cir. 2008); *Phelps Dodge Corp. v. Federal Mine Safety and Health Review Commission*, 681 F.2d 1189, 1192 (9th Cir. 1982). So too here. Very troublingly, without such an effort at seeking the legal meaning of the disputed clause, we have a reading by the Secretary that offers none of the "precision and guidance [that] are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *FCC v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012). That failing is especially acute for an action that excludes appellants from pursuing careers in the pharmaceutical industry—where they've spent their lifetimes accumulating industry-specific human capital. See J.A. 390, 428, 483. Compare *Greene v. McElroy*, 360 U.S. 474, 492 (1959).

"Misdemeanor" and "fraud" have well-established meanings. The Secretary need only prescribe some specific meaning for the word "related." It might require that an excluded individual's conviction rest on findings of all the

elements of fraud, as the appellants argue; or it might require only that it rest on findings of the person's culpable responsibility for a material misrepresentation. It is for the Secretary to say, subject of course to judicial review. But an invocation of "nexus," though it fits linguistically, is simply not a legal interpretation as that process is normally understood. It's more accurately seen as a refusal to interpret.

Given the absence of an analytically reasonable interpretation by the Secretary, and the Secretary's leeway under *Chevron* to reject appellants' proposed interpretation, I would remand to the district court to remand to the Secretary to articulate a meaning of 42 U.S.C. § 1320a-7(b) that is consistent with standard principles of legal interpretation.