TER BEEK v CITY OF WYOMING

Docket No. 306240. Submitted July 11, 2012, at Grand Rapids. Decided
    July 31, 2012, at 9:15 a.m. Leave to appeal granted, 493 Mich 957.
John Ter Beek filed an action in the Kent Circuit Court against the
    city of Wyoming, seeking declaratory relief to have a zoning
    ordinance declared void. Defendant had enacted a zoning ordi-
    nance that prohibits uses that are contrary to federal law, state law
    or local ordinance. Violations of the city's zoning ordinances are
    punishable by civil sanctions, and zoning violations are also
    subject to injunctive relief pursuant to the Zoning Enabling Act,
    MCL 125.3407. Plaintiff, who is a qualified medical-marijuana
    patient, MCL 333.26424a, under the Michigan Medical Marihuana
    Act (MMMA), MCL 333.26421 et seq., lives within the city limits,
    where he grows and uses marijuana for medical purposes in his
    home. Both parties moved for summary disposition. Plaintiff
    argued that because the federal controlled substances act (CSA),
    21 USC 801 et seq., prohibits the use, manufacture, or cultivation
    of marijuana, the ordinance by extrapolation would prohibit the
    use, manufacture, or cultivation of marijuana for medical use.
    Thus, the ordinance would conflict with and was preempted by the
    MMMA, which allows qualified medical-marijuana use, manufac-
    ture, and cultivation. Defendant argued that the zoning ordinance
    was not preempted by the MMMA; rather, the CSA preempted the
    MMMA. The court, Dennis B. Leiber, J., denied plaintiff's declara-
    tory relief request and granted summary disposition in favor of
    defendant, concluding that the CSA preempted the MMMA be-
    cause the MMMA was an obstacle to the purposes and objectives of
    Congress as specified in the CSA. Plaintiff appealed.
    The Court of Appeals held:
    1. A city ordinance that purports to prohibit what a state
statute permits is void. A state statute preempts regulation by an
inferior government when the local regulation directly conflicts
with the statute or when the statute completely occupies the
regulatory field. A direct conflict exists when the local regulation
prohibits what the statute permits. The MMMA provides that a
qualifying patient who has been issued and possesses a registry
identification card shall not be subject to arrest, prosecution, or

penalty in any manner for the medical use of marijuana. Federal law, under 21 USC 841(a)(1), prohibits any person from knowingly or intentionally manufacturing, distributing, or possessing with intent to manufacture, distribute or dispense a schedule I controlled substance such as marijuana. The ordinance, which prohibits uses that are contrary to federal law, state law or local ordinance, is void because it conflicts with and is preempted by MCL 333.26424(a). The CSA in conjunction with defendant's zoning ordinance makes any medical use of marijuana under the MMMA a violation of defendant's zoning ordinance. If their marijuana use conforms to the limitations in the MMMA, under MCL 333.26424(a) registered, qualified medical-marijuana users may not be subjected to either civil or criminal penalties. The ordinance directly conflicts with the MMMA because the ordinance expressly prohibits uses by registered medical-marijuana users that are contrary to federal law by providing penalties of fines and injunctive relief, which the MMMA expressly prohibits. The sanction imposed pursuant to the ordinance rests on the premise that the statutorily allowed medical use of marijuana constitutes criminal activity, which directly conflicts with the MMMA. Civil injunctive relief that could be imposed under the ordinance to prohibit the medical use of marijuana within the city limits constitutes a penalty as proscribed by MCL 333.26424(a).

2. A federal statute will not preempt a state statute unless Congress clearly manifested an intent to do so. The only type of preemption at issue in this case was conflict preemption. Impossibility conflict preemption, which occurs when compliance with both federal and state regulations is a physical impossibility, and obstacle conflict preemption, which occurs when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, are the two ways that conflict preemption can occur. It is not physically impossible to comply with logically inconsistent statutes when a person can simply refrain from doing the activity that one statute purports to permit and the other statute purports to proscribe. The MMMA is not preempted by the CSA on the basis of impossibility conflict preemption because it is not physically impossible to comply with both the MMMA and the CSA at the same time. While the CSA proscribes marijuana in all form, the MMMA permits, but does not mandate, medical use of marijuana in limited circumstances and grants immunity from penalties or prosecution to qualified and registered patients. Because the medical use permitted by the MMMA is not mandatory, it is not physically impossible to comply with both the federal and state statutes simultaneously. The MMMA is also not preempted by the CSA on the basis of obstacle

conflict preemption. To determine whether a state statute stands as an obstacle to the full purposes and objectives of Congress, the purposes and objectives of the state statute at issue must also be identified. Congress clearly intended to comprehensively regulate all uses of marijuana when it enacted the CSA. The MMMA was enacted to allow for a limited class of individuals the medical use of marijuana for the health and welfare of the state's citizens. The MMMA, under MCL 333.26422, recognizes that federal law currently prohibits any use of marijuana, that almost all marijuana-based arrests are made under state law, and that the state law would not affect the federal law. Read together with MCL 333.26422(b) and (c), the immunity granted to qualified, registered medical-marijuana users under MCL 333.26424(a) was clearly not intended to exempt them from federal prosecution under the CSA. The CSA does not preempt the MMMA's grant of immunity because Congress cannot require the states to enforce federal law. Accordingly, the grant of immunity by MCL 333.26424(a) to qualified registered medical marijuana users is not preempted by the CSA because it only grants immunity from state prosecution and therefore does not stand as an obstacle to the accomplishment and execution of the full purposes and objective of Congress.

Reversed and remanded.

1. STATUTES — MUNICIPAL CORPORATIONS — ORDINANCES — PREEMPTION — DIRECT CONFLICT — MICHIGAN MEDICAL MARIHUANA ACT.

A city ordinance that purports to prohibit what a state statute permits is void; a state statute preempts regulation by an inferior government when the local regulation directly conflicts with the statute or when the statute completely occupies the regulatory field; a direct conflict exists when the local regulation prohibits what the statute permits; the Michigan Medical Marihuana Act, which grants immunity from prosecution to qualified, registered medical-marijuana users for the use, manufacture, and cultivation of marijuana for medical purposes, preempts a local ordinance that criminalizes all uses of marijuana through its incorporation of the federal controlled substances act (MCL 333.26421 *et seq.*; 21 USC 801 *et seq.*).

2. STATUTES — FEDERAL PREEMPTION — CONFLICT PREEMPTION.

A federal statute will not preempt a state statute unless Congress clearly manifested an intent to do so; impossibility conflict preemption occurs when compliance with both federal and state regulations is a physical impossibility; obstacle conflict preemption occurs when state law stands as an obstacle to the accomplishment

and execution of the full purposes and objectives of Congress; it is not physically impossible to comply with logically inconsistent statutes when a person can simply refrain from doing the activity that one statute purports to permit and the other statute purports to proscribe; to determine whether a state statute stands as an obstacle to the full purposes and objectives of Congress, the purposes and objectives of the state statute at issue must also be identified.

3. STATUTES — FEDERAL PREEMPTION — MICHIGAN MEDICAL MARIHUANA ACT.

Section 4(a) of the Michigan Medical Marihuana Act, MCL 333.26424(a), which grants immunity from prosecution to qualified registered medical-marijuana users for the use, manufacture, and cultivation of marijuana for medical purposes, is not preempted by the federal controlled substances act, 21 USC 801 *et seq.*, which prohibits all uses of marijuana under 21 USC 841(a)(1), because it only grants immunity from state prosecution and therefore does not stand as an obstacle to the accomplishment and execution of the full purposes and objective of Congress.

*Daniel S. Korobkin, Michael J. Steinberg, Kary L. Moss, Michael O. Nelson,* and *Miriam J. Aukerman* for John Ter Beek.

*Sluiter, Van Gessel, Winther & Carlson, PC* (by *Jack R. Sluiter* and *Arthur P. Winther*), for the city of Wyoming.

Amicus Curiae:

*Donald L. Knapp, Jr.,* Corporation Counsel, and *Michael E. Fisher,* Assistant Corporation Counsel, for the city of Livonia.

Before: SHAPIRO, P.J., and HOEKSTRA and WHITBECK, JJ.

HOEKSTRA, J. In this declaratory judgment action, plaintiff, John Ter Beek, appeals as of right the trial court's order granting summary disposition in favor of defendant, the city of Wyoming. Plaintiff sought to void

defendant's zoning ordinance on state preemption grounds because the zoning ordinance was enacted to prohibit conduct permitted by the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.* Because we conclude that defendant's zoning ordinance directly conflicts with the MMMA, and the federal controlled substances act (CSA), 21 USC 801 *et seq.*, does not preempt § 4(a) of the MMMA, MCL 333.26424(a), we reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 1, 2010, defendant amended its city code and enacted a zoning ordinance that provides: "Uses not expressly permitted under this article are prohibited in all districts. Uses that are contrary to federal law, state law or local ordinance are prohibited." Wyoming Ordinance, § 90-66. Violations of Wyoming's city code, including zoning violations, are punishable by "civil sanctions, including, without limitation, fines, damages, expenses and costs," Wyoming Ordinance, § 1-27(a), and zoning violations are further subject to injunctive relief pursuant to Michigan's zoning enabling act, MCL 125.3407.

Plaintiff, who is a qualified medical-marijuana[1] patient, lives within the city limits of Wyoming, where he grows and uses marijuana for medical purposes in his home, presumably in compliance with the MMMA. He has not been charged with violating the ordinance, nor has he been subjected to any penalties, fines, or injunctions.[2] After the enactment of defendant's zoning ordi-

---

[1] While the statute refers to "marihuana," by convention this Court uses the more common spelling "marijuana."

[2] We note that the issue of plaintiff's standing to challenge the ordinance was addressed by the trial court. The trial court relied on *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d

nance, plaintiff filed a complaint seeking declaratory relief against defendant. Plaintiff's first amended complaint alleged that because the federal CSA prohibits the manufacture and use of marijuana, which the CSA sanctions as a schedule I controlled substance, defendant's ordinance prohibits the use, manufacture, or cultivation of marijuana for medical purposes. Plaintiff's complaint further alleged that defendant's ordinance is invalid because the ordinance prohibits and makes punishable the use, manufacture, or cultivation of marijuana for medical purposes in direct conflict with the MMMA. On these grounds, plaintiff maintained that the ordinance conflicts with the MMMA and, therefore, is preempted by the MMMA, and, consequently, is invalid. Defendant's answer admits that "the cultivation, possession and distribution of marihuana are subject to the zoning code of Wyoming," but denies that its ordinance is preempted by the MMMA.

The parties filed competing motions for summary disposition pursuant to MCR 2.116(C)(10). Plaintiff argued that the ordinance directly conflicted with the MMMA and was accordingly invalid. Plaintiff further maintained that the federal CSA did not preempt the MMMA. Defendant argued that its ordinance was not preempted by the MMMA because the ordinance enforced the federal prohibition on the cultivation and distribution of marijuana as set forth in the CSA and that the CSA preempted the MMMA.

After hearing arguments from both sides, the trial court found that the CSA preempted the MMMA be-

---

686 (2010), and found that plaintiff had standing because he has a right or interest in using and growing marijuana for medical purposes that would be affected by defendant's ordinance in a way that is different from the rights and interests of the public at large. Defendant does not raise the issue of standing on appeal, and at oral argument agreed that plaintiff has standing to maintain this action.

cause the MMMA stood as an obstacle to the purposes and objectives of Congress as specified in the CSA. Consequently, the trial court declined to decide whether the MMMA preempted defendant's ordinance and, accordingly, issued an order granting summary disposition pursuant to MCR 2.116(C)(10) in favor of defendant and denying plaintiff's request for declaratory relief.

## II. STATE PREEMPTION OF THE WYOMING CITY ORDINANCE

On appeal, plaintiff reiterates his argument that defendant's ordinance is invalid because it conflicts with the MMMA. Accordingly, plaintiff requests that this Court reverse the finding of the trial court and remand with instructions to grant summary disposition in his favor and enter a declaratory judgment finding defendant's ordinance void and unenforceable to the extent that it prohibits the medical use of marijuana in accordance with the MMMA.

Whether a state statute preempts a local ordinance is a question of statutory interpretation and, therefore, a question of law that we review de novo. *Mich Coalition for Responsible Gun Owners v City of Ferndale*, 256 Mich App 401, 405; 662 NW2d 864 (2003). We also review de novo a decision to grant or deny a declaratory judgment; however, the trial court's factual findings will not be overturned unless they are clearly erroneous. *Auto-Owners Ins Co v Harvey*, 219 Mich App 466, 469; 556 NW2d 517 (1996).

Further, we review de novo a trial court's decision to grant summary disposition. *Coblentz v City of Novi*, 475 Mich 558, 567; 719 NW2d 73 (2006). Summary disposition pursuant to MCR 2.116(C)(10) tests the factual support for a claim based on the affidavits, pleadings, depositions, admissions, and other evidence submitted

by the parties. *Id.* The evidence is viewed in the light most favorable to the nonmoving party. *Id.* at 567-568. "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to a judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

A city ordinance that purports to prohibit what a state statute permits is void. *Walsh v City of River Rouge*, 385 Mich 623, 636; 189 NW2d 318 (1971). "A state statute preempts regulation by an inferior government when the local regulation directly conflicts with the statute or when the statute completely occupies the regulatory field." *USA Cash #1, Inc v City of Saginaw*, 285 Mich App 262, 267; 776 NW2d 346 (2009). A direct conflict exists between a local regulation and state statute when the local regulation prohibits what the statute permits. *Id.*

In its brief on appeal, defendant specifically acknowledges that the purpose of the ordinance "is to regulate the growth, cultivation and distribution of medical marihuana in the City of Wyoming by reference to the federal prohibitions regarding manufacturing and distribution of marihuana." In making this argument, defendant relies on 21 USC 841(a)(1), which makes it "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ." Further, under 21 USC 812(c)(10), marijuana is a schedule I controlled substance; thus, manufacturing or possessing marijuana is generally prohibited under federal law. Consequently, these provisions of the CSA when read together with defendant's zoning ordinance, which makes any violation of federal law an unpermitted use of one's property,

cause any medical use[3] of marijuana pursuant to the MMMA on any property within the city of Wyoming to be a violation of defendant's zoning ordinance. Although plaintiff has not been punished for violating defendant's zoning ordinance, defendant's municipal code permits "civil sanctions, including, without limitation, fines, damages, expenses and costs" for violations of the code. Wyoming Ordinance, § 1-27(a). In addition, it cannot be disputed that if found in violation of Wyoming Ordinance, § 90-66, plaintiff would be subject to injunctive relief that would restrict the use of his property to purposes that would otherwise be permitted under the MMMA. See MCL 125.3407.

In contrast, the MMMA permits medical use as defined in MCL 333.26423(e), which includes use, possession, cultivation, delivery, and transfer. Further, the plain language of MCL 333.26424(a) provides immunity for a qualifying patient—which plaintiff is acknowledged to be—from being "subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege." Under these circumstances, the question presented regarding conflict preemption between the MMMA and defendant's ordinance is whether the possibility of plaintiff's being subject to the civil sanctions of the Wyoming Ordinance, § 1-27(a) if found in violation of Wyoming Ordinance, § 90-66, for engaging in activity otherwise permitted by the MMMA constitutes a "penalty in any manner" prohibited by MCL 333.26424(a).

---

[3] " 'Medical use' means the acquisition, possession, cultivation, manufacture, use, internal possession, delivery, transfer, or transportation of marihuana or paraphernalia relating to the administration of marihuana to treat or alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition." MCL 333.26423(e).

In addressing the issue of statutory interpretation, we apply the rule of statutory construction that "[t]he words of an initiative law are given their ordinary and customary meaning as would have been understood by the voters." *Welch Foods, Inc v Attorney General*, 213 Mich App 459, 461; 540 NW2d 693 (1995). Further, we presume that the meaning as plainly expressed in the statute is what was intended. *People v Redden*, 290 Mich App 65, 76; 799 NW2d 184 (2010). We may consult dictionaries in order to determine the plain and ordinary meaning of words not defined by a statute. *Sanchez v Eagle Alloy, Inc*, 254 Mich App 651, 668; 658 NW2d 510 (2003).

The word "penalty" is undefined by MCL 333.26424(a). "Penalty" is defined as "a punishment imposed or incurred for a violation of law or rule . . . . [S]omething forfeited . . . ." *Random House Webster's College Dictionary* (2001). Further, penalty as used in the statute is modified by the prepositional phrase "in any manner." Plainly, this phrase is intended to require that the immunity from penalties is to be given the broadest application. Thus, any possible uncertainty about whether immunity under the MMMA is intended to cover both civil penalties—such as those permitted by defendant's ordinance—as well as criminal penalties is removed by the emphasis added by the language "in any manner." Thus, under MCL 333.26424(a), we conclude that it is clear that registered, qualified medical-marijuana users are not to be subject to any penalty, whether civil or criminal, if their medical use of marijuana conforms to the limitations set forth in the MMMA.

Applying the plain meaning of the words used in the immunity provision of the MMMA to defendant's ordinance, there can be no doubt that enforcement of the

ordinance could result in the imposition of sanctions that the MMMA does not permit. The provisions directly conflict because the ordinance expressly prohibits uses contrary to federal law and, therefore, provides for punishment of qualified and registered medical-marijuana users in the form of fines and injunctive relief, which constitute penalties that the MMMA expressly prohibits. See *Shelby Charter Twp v Papesh*, 267 Mich App 92, 105-106; 704 NW2d 92 (2005) ("A direct conflict exists when the ordinance permits what the statute prohibits or the ordinance prohibits what the statute permits.").

Further, we find defendant's arguments to the contrary unavailing. To the extent that defendant argues that its ordinance does not conflict with the MMMA because it does not *require* criminal or civil penalties, we note that civil penalties in response to zoning violations are expressly provided for in defendant's city code. Wyoming Ordinance, § 1-27(a). The fact that civil penalties are not required does not save the ordinance from being in direct conflict with the MMMA because the mere possibility of such a penalty directly conflicts with the plain language of MCL 333.26424(a). Moreover, defendant's ordinance does not attempt to regulate lawful conduct, but attempts to completely ban the medical use of marijuana on the basis of the authority of the CSA, a federal criminal statute.[4] Thus, any sanction imposed pursuant to the ordinance rests on the premise that the statutorily allowed medical use of marijuana constitutes criminal activity, a proposition that is in direct conflict with the MMMA. In addition, we reject the notion implied in defendant's brief on appeal that

---

[4] We note that this is not a case in which zoning laws are enacted to regulate in which areas of the city the medical use of marijuana as permitted by the MMMA may be carried out.

enforcing the ordinance through the remedy of civil injunctive relief is not a penalty. We conclude that the civil injunctive relief that could be used to prohibit any medical use of marijuana within the city would constitute a "penalty in any manner" as proscribed by MCL 333.26424(a).

Accordingly, we hold that defendant's ordinance, Wyoming Ordinance, § 90-66, is void and unenforceable to the extent that it prohibits the medical use of marijuana in accordance with the MMMA because it is preempted by MCL 333.26424(a). *Id.*

### III. FEDERAL PREEMPTION OF THE MMMA

Defendant alternatively argues that its ordinance is valid and enforceable even if it is preempted by the MMMA because the federal CSA preempts the state MMMA. Defendant argues that because the MMMA is preempted by federal law, it does not stand as an obstacle to the enforcement of its ordinance. Plaintiff argues that federal law does not preempt the MMMA.

Whether a federal statute preempts state law is a question of law that we review de novo. *Packowski v United Food & Commercial Workers Local 951*, 289 Mich App 132, 138; 796 NW2d 94 (2010).

In every federal preemption case, we must first determine the intent of Congress in enacting the federal statute at issue. *Wyeth v Levine*, 555 US 555, 565; 129 S Ct 1187; 173 L Ed 2d 51 (2009). In all preemption cases, courts should assume that "the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (quotation marks and citations omitted). The areas of public health and drug regulation are traditionally left to the police powers of the states. See, e.g., *Gonzales v Oregon*, 546 US 243, 270; 126 S Ct 904;

163 L Ed 2d 748 (2006). Accordingly, we begin with the presumption that the MMMA is not preempted by the CSA. *Id.* at 270-271; see also *Wyeth,* 555 US at 565. Moreover, we note the United States Supreme Court's recent caution against a "freewheeling judicial inquiry into whether a state statute is in tension with federal objectives" because "such an endeavor would undercut the principle that it is Congress rather than the courts that preempts state law." *Chamber of Commerce of the United States v Whiting,* 563 US ___, ___; 131 S Ct 1968, 1985; 179 L Ed 2d 1031 (2011) (quotation marks and citation omitted).

While there are three types of federal preemption, the only type of preemption at issue in this case is conflict preemption.[5] *Packowski,* 289 Mich App at 140. The United States Supreme Court has recognized two different ways that conflict preemption can occur. *Hillsborough Co, Fla v Automated Med Laboratories, Inc,* 471 US 707, 713; 105 S Ct 2371; 85 L Ed 2d 714 (1985). Impossibility conflict preemption occurs when "compliance with both federal and state regulations is a physical impossibility . . . ." *Id.* (quotation marks and citation omitted). Obstacle conflict preemption occurs "when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (quotation marks and citation omitted).

---

[5] Field preemption and express preemption are the two other types of federal preemption. *Packowski,* 289 Mich App at 140. Field preemption is not applicable because 21 USC 903 expressly declares that Congress did not intend to occupy the entire field of controlled substance regulation "unless there is a positive conflict" between the CSA and state law. Moreover, express preemption is inapplicable because there is no clearly stated intent to preempt state law in the CSA. Accordingly, on the basis of the plain language of the CSA, conflict preemption, which considers whether there is a direct conflict between the state and federal law, is the only type of preemption at issue.

Impossibility conflict preemption requires a finding that "compliance with both federal and state regulations is a physical impossibility . . . ." *Boggs v Boggs*, 520 US 833, 844; 117 S Ct 1754; 138 L Ed 2d 45 (1997) (quotation marks and citation omitted). The United States Supreme Court has held that it is not physically impossible to comply with logically inconsistent statutes when a person can simply refrain from doing the activity that one statute purports to permit and the other statute purports to proscribe. See, e.g., *Barnett Bank v Nelson*, 517 US 25, 31; 116 S Ct 1103; 134 L Ed 2d 237 (1996) (finding that preemption on the basis of impossibility inapplicable when a federal statute authorized national banks to do something that state law prohibited).[6]

As noted previously, the CSA proscribes marijuana in all forms, medicinal or otherwise. The MMMA, however, permits, but does not mandate, medical use of marijuana in limited circumstances and grants immunity from penalties or prosecutions to qualified and registered patients. Because the medical use permitted by the MMMA is not mandatory, it is not physically impossible to comply with both statutes simultaneously. Thus, we conclude that because it is not physically impossible to comply with both the MMMA and the CSA at the same time, the MMMA is not preempted by the CSA on the basis of impossibility conflict preemption.[7]

---

[6] The doctrine of impossibility preemption is rarely applied. Indeed, the impossibility preemption test has been described as "vanishingly narrow." Nelson, *Preemption*, 86 Va L R 225, 228 (2000).

[7] Our conclusion is consistent with the conclusions reached by the California and Oregon courts, both of which addressed whether their state medical-marijuana laws were preempted by the CSA on grounds of impossibility preemption. Both state courts have concluded that their state laws were not preempted by federal law on the basis of impossibility

The second type of conflict preemption—obstacle preemption—occurs "when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hillsborough Co*, 471 US at 713. Accordingly, the purposes and objectives of Congress must be identified. See *id.* (noting that in the absence of express preemption language, Congress's intent to preempt state law may be inferred in certain circumstances). Moreover, to determine whether a state statute stands as an obstacle to the accomplishment of the full purposes and objectives of Congress, the purposes and objectives of the state statute at issue must also be identified. See *Willis v Winters*, 350 Or 299, 312; 253 P3d 1058 (2011), citing *Florida Lime & Avocado Growers, Inc v Paul*, 373 US 132, 144-146; 83 S Ct 1210; 10 L Ed 2d 248 (1963).

In *Gonzales v Raich*, 545 US 1, 12-13; 125 S Ct 2195; 162 L Ed 2d 1 (2005), the United States Supreme Court explained:

> The main objectives of the CSA were to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances. Congress was particularly concerned with the need to prevent the diversion of drugs from legitimate to illicit channels.
>
> To effectuate these goals, Congress devised a closed regulatory system making it unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA.

With regard to marijuana, Congress classified the drug as a schedule I controlled substance, meaning that

---

preemption. See *Emerald Steel Fabricators, Inc v Bureau of Labor & Indus*, 348 Or 159, 176; 230 P3d 518 (2010); *San Diego Co v San Diego NORML*, 165 Cal App 4th 798, 824-825; 81 Cal Rptr 3d 461 (2008); *Qualified Patients Ass'n v City of Anaheim*, 187 Cal App 4th 734, 758-759; 115 Cal Rptr 3d 89 (2010).

Congress did not recognize an accepted medical use for the drug. *Id.* at 14; 21 USC 812(b)(1) and (c). Thus, in enacting the CSA, Congress expressed a clear intention to comprehensively regulate all uses of marijuana. See *Gonzales*, 545 US at 14-15 (noting that because Congress classified marijuana as schedule I controlled substance, the manufacture, distribution or possession of it became a criminal; offense).

"The purpose of the MMMA is to allow a limited class of individuals the medical use of marijuana, and the act declares this purpose to be an 'effort for the health and welfare of [Michigan] citizens.' " *People v Kolanek*, 491 Mich 382; 817 NW2d 528 (2012), quoting MCL 333.26422(c). The ordinance at issue in this case conflicts with § 4(a) of the MMMA, which grants immunity to medical-marijuana users and provides in pertinent part that a "qualifying patient who has been issued and possesses a registry identification card shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege . . . ." MCL 333.26424(a). While the grant of immunity set forth in § 4(a) does not specifically limit its prohibition on arrest, prosecution, or penalty to state law, it cannot be disputed that state medical-marijuana laws do not and cannot supersede federal laws criminalizing the possession of marijuana. *United States v Hicks*, 722 F Supp 2d 829, 833 (ED Mich, 2010).

Moreover, MCL 333.26422(c) acknowledges that "[a]lthough federal law currently prohibits any use of marihuana except under very limited circumstances, states are not required to enforce federal law or prosecute people for engaging in activities prohibited by federal law." Additionally, MCL 333.26422(b) recognizes that 99 out of every 100 marijuana-based arrests in the United States are made under state law. Accordingly,

the statute declares that *"changing state law* will have the practical effect of protecting from arrest the vast majority of seriously ill people who have a medical need to use marihuana." *Id.* (emphasis added). Accordingly, the MMMA itself recognizes the federal policy regarding marijuana and acknowledges that state law will not affect the federal law.

It is well established that different provisions of a statute that relate to the same subject matter are *in pari materia* and must be read together as one law. *McNeil v Charlevoix Co,* 275 Mich App 686, 701; 741 NW2d 27 (2007). Moreover, "[p]roper application of the in pari materia rule gives the fullest possible effect to the legislative purpose underlying harmonious statutes without overreaching, unreasonableness, or absurdity. If multiple statutes can be construed in a way that avoids conflict, that construction should control." *Ryan v Dep't of Corrections,* 259 Mich App 26, 30; 672 NW2d 535 (2003) (citations omitted).

Therefore, when the immunity granted in MCL 333.26424(a) is read in context with MCL 333.26422(b) and (c), it is plain that the immunity was not intended to exempt qualified medical-marijuana users from federal prosecutions. Specifically the language in MCL 333.26422(b) and (c) refers to changing state law and acknowledges that federal law prohibits the medical use of marijuana. Moreover, the proclamation in MCL 333.26422(b) that changing state law will protect "the vast majority of seriously ill people who have a medical need to use marihuana" from arrest, instead of stating that the change in the law will protect all qualified medical-marijuana users from arrest, acknowledges that users of marijuana for medical purposes are still subject to federal prosecution. Further, construing MCL 333.26424(a) to grant immunity only from state pros-

ecution and other penalties avoids the absurd result that the MMMA purportedly preempts federal prosecutions, and avoids conflict with the CSA. See *Ryan*, 259 Mich App at 30 (when construing multiple statutes together, this Court should arrive at a construction that avoids absurd results or conflicts, if possible). The court in *Hicks*, 722 F Supp 2d at 833, followed this approach when it cited MCL 333.26422(c) and noted that "the MMMA specifically acknowledges that it does not supercede [sic] or alter federal law." Therefore, we conclude that the immunity granted under the statute was not intended to include protection from federal prosecutions. See *Hicks*, 722 F Supp 2d at 833.

Moreover, the MMMA's decriminalization of the medical use of marijuana is not contrary to the CSA's provisions punishing all medical uses of marijuana. The CSA provisions do not preempt the MMMA's grant of immunity as found in MCL 333.26424(a) because it is well established that Congress cannot require the states to enforce federal law. See, e.g., *Printz v United States*, 521 US 898, 924; 117 S Ct 2365; 138 L Ed 2d 914 (1997) ("[E]ven where Congress has the authority under the Constitution to pass laws requiring or prohibiting certain acts, it lacks the power directly to compel the States to require or prohibit those acts . . . .") (quotation marks and citation omitted); *New York v United States*, 505 US 144, 166; 112 S Ct 2408; 120 L Ed 2d 120 (1992) ("We have always understood that even where Congress has the authority under the Constitution to pass laws requiring or prohibiting certain acts, it lacks the power directly to compel the States to require or prohibit those acts."). Thus, while Congress can criminalize all uses of medical marijuana, it cannot require the states to do the same. *Printz*, 521 US at 924; *New York*, 505 US at 166. Accordingly, Michigan is not required to criminalize all medical uses of marijuana,

and the immunity afforded to qualified patients for the medical use of marijuana by MCL 333.26424(a) is permissible. Accordingly, we conclude that the immunity provision of MCL 333.26424(a) is not preempted by the CSA because it only grants immunity from state prosecution and, therefore, does not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

### IV. CONCLUSION

Defendant's ordinance is void and unenforceable to the extent that it purports to sanction the medical use of marijuana in conformity with the MMMA because the ordinance directly conflicts with MCL 333.26424(a). *Walsh*, 385 Mich at 636. Moreover, MCL 333.26424(a) is not preempted by the CSA because the limited grant of immunity from a "penalty in any manner" pertains only to state action and does not purport to interfere with federal enforcement of the CSA. Accordingly, we reverse the trial court's grant of summary disposition in favor of defendant and remand for entry of summary disposition in favor of plaintiff.

Reversed and remanded. We do not retain jurisdiction. No taxable costs pursuant to MCR 7.219, a public question being involved.

SHAPIRO, P.J., and WHITBECK, J., concurred with HOEKSTRA, J.