Opinion by JUDGE WEBB
¶ 1 In 2000, Colorado's voters amended our Constitution to allow persons "suffering from debilitating medical conditions" to use "medical marijuana." Colo. Const. art. XVIII, § 14 (MM Amendment). This appeal concerns only section 14(2)(e). As relevant here, it requires the return of marijuana seized from a medical marijuana patient to the patient if, as occurred here, a jury acquits the patient of state criminal drug charges arising from the seized marijuana (return provision). The prosecution contends that the Controlled Substances Act (CSA), 21 U.S.C. § 801 et seq., preempts the return provision.[1] It relies on only "obstacle preemption," a subset of the conflict preemption doctrine.
¶ 2 We reject this contention, for three reasons. First, the "positive conflict" phrase in the CSA's preemption section, 21 U.S.C. § 903, precludes applying obstacle preemption. Second, even if obstacle preemption applies, CSA section 885(d), which prevents federal prosecution of "any duly authorized officer of any State ... who shall be lawfully engaged in the enforcement of any law ... relating to controlled substances," would preclude applying prohibitions in other CSA sections to police officers complying with a court order issued under the return provision. Third, and making the same assumption, the recipient patient's involvement in the return process also does not create obstacle preemption because the federal government could not commandeer state officials to seize and hold marijuana, and the MM Amendment does not require patients to either demand return or accept returned marijuana.
¶ 3 Therefore, we affirm the trial court's order requiring police officers to return marijuana and marijuana plants to defendant, Robert Clyde Crouse.
*603 I. Background
¶ 4 Colorado Springs police officers searched Crouse's home. They seized marijuana and marijuana plants. The prosecution charged him with one felony count of cultivation of more than thirty marijuana plants and one felony count of possession of between five and one hundred pounds of marijuana with the intent to distribute it.
¶ 5 At trial, Crouse raised only an affirmative defense that MM Amendment section (2)(a) expressly authorizes his possession-he was a medical marijuana patient, and the marijuana that he possessed was medically necessary to treat his condition. The jury acquitted him of both charges.
¶ 6 Relying on MM Amendment section (2)(e), Crouse moved the trial court to order the police to return the seized marijuana plants and marijuana. The prosecution opposed the motion on two grounds: first, if the police returned the marijuana to him, they would violate the CSA by distributing marijuana to Crouse, and he would violate the CSA by receiving the marijuana; and, second, for these reasons, the CSA preempts this part of the MM Amendment.
¶ 7 The trial court ordered the police to return the marijuana and the marijuana plants to Crouse. The prosecution unsuccessfully sought a stay pending appeal from both the trial court and this court. Then the police returned the marijuana and the marijuana plants.
¶ 8 The prosecution appeals the trial court's order, again arguing obstacle preemption because police officers' returning marijuana to a patient would violate the CSA. It does not separately argue preemption because a patient's receipt of such marijuana would also violate the CSA.
II. This Appeal Is Not Moot
¶ 9 Initially, we reject Crouse's contention that this appeal is moot.
¶ 10 Section 16-12-102(1), C.R.S.2013, authorizes the prosecution to "appeal any decision of a court in a criminal case upon any question of law." C.A.R. 4(b)(2) states that, when the prosecution's appeal is authorized by statute, as it is here, this court is required to "issue a written decision answering the issues in the case and shall not dismiss the appeal as without precedential value."
¶ 11 But this court lacks jurisdiction over such an appeal unless the ruling or order that is the subject of the appeal was entered in a case that "produced a final judgment." People v. Gabriesheski, 262 P.3d 653, 657 (Colo.2011). An acquittal or a dismissal of the charges in a case results in a final judgment. Id . And a final judgment "ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceedings." People v. Guatney, 214 P.3d 1049, 1050-51 (Colo.2009) ("[P]rosecution appeals ... are subject to the final judgment requirement of C.A.R. 1.").
¶ 12 After the jury acquitted Crouse, he sought return of the marijuana and marijuana plants. The trial court had jurisdiction to rule on that motion. See People v. Hargrave, 179 P.3d 226, 228 (Colo.App.2007) ; People v. Rautenkranz, 641 P.2d 317, 318 (Colo.App.1982) (" 'We hold that the district court, once its need for the property has terminated, has both the jurisdiction and the duty to return the contested property ... regardless and independently of the validity or invalidity of the underlying search and seizure.' " (quoting United States v. Wilson, 540 F.2d 1100, 1104 (D.C.Cir.1976) )).
¶ 13 We conclude that the order granting Crouse's motion was a final judgment subject to appeal under section 16-12-102(1) because the motion was litigated and the order was entered after Crouse had been acquitted, which resolved all the charges in the case. Once the court granted the motion, nothing remained for the court to do to determine the rights of defendant and the prosecution concerning the motion. See Guatney, 214 P.3d at 1050-51.
¶ 14 Accordingly, we further conclude that this appeal is not moot.
III. Preemption
A. Standard of Review
¶ 15 Whether a federal statute preempts state law is an issue of federal law.
*604 Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 214, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). This issue is reviewed de novo. Kohn v. Burlington N. & Santa Fe R.R., 77 P.3d 809, 811 (Colo.App.2003).
B. The Effect of the Supremacy Clause
¶ 16 The "Constitution, and the Laws of the United States ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby; any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. This language is known as the Supremacy Clause. Under it, state laws that "interfere with, or are contrary to, the laws of Congress" are preempted. Brubaker v. Bd. of Cnty. Comm'rs, 652 P.2d 1050, 1054 (Colo.1982) (internal quotation marks omitted).
C. As an Exercise of Colorado's Police Power, Section (2)(e) of the MM Amendment Is Presumably Not Preempted by the CSA
¶ 17 Preemption analysis begins with the "assumption that Congress did not intend to displace state law." Maryland v. Louisiana, 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). The assumption strengthens if the federal law involves a "field which the [s]tates have traditionally occupied." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). This is so because federal law generally does not supersede "the historic police powers" of a state, unless Congress has expressed a "clear and manifest purpose" to do so. Id. ; see also United States v. Oakland Cannabis Buyers' Co-op., 532 U.S. 483, 502, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001) (Stevens, J., concurring in the judgment) ("[F]ederal courts [must], whenever possible, ... avoid or minimize conflict between federal and state law, particularly in situations in which the citizens of a [s]tate have chosen to serve as a laboratory in the trial of novel social and economic experiments without risk to the rest of the country." (internal quotation marks omitted)).
¶ 18 By enacting the CSA, Congress did not intend to preempt the entire field of drug enforcement. Under 21 U.S.C. § 903, the CSA shall not "be construed" to "occupy the field" in which the CSA operates "to the exclusion of any [s]tate law on the same subject matter which would otherwise be within" the state's authority. Rather, section 903 provides that state laws are preempted only when "a positive conflict" exists between a provision of the CSA and a state law "so that the two cannot consistently stand together." Id.
¶ 19 One reason for maintaining state control is that "the regulation of drug abuse is a state concern with special local problems necessitating use of the state police power." Ledcke v. State, 260 Ind. 382, 296 N.E.2d 412, 420 (1973). "Congress evidently intended that both federal and state governments should regulate the drug traffic which has become so prevalent." State v. Allard, 313 A.2d 439, 444 (Me.1973). When viewed from the perspective that drug abuse and drug trafficking should be concurrently regulated by the federal and state governments, Congress' statement in section 903 that the CSA "does not generally preempt state law gives the usual assumption against preemption additional force." Nat'l Pharmacies, Inc. v. De Melecio, 51 F.Supp.2d 45, 54 (D.C.P.R.1999) (emphasis in original).
D. The Assumption Against Preemption Has Not Been Overcome
1. The Test
¶ 20 Although Congress may preempt "state regulation contrary to federal interests," it cannot "commandeer the legislative processes of the States." New York v. United States, 505 U.S. 144, 188, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) (internal quotation marks and alterations omitted). Thus, on the one hand, federal authorities may enforce federal marijuana laws involving crimes committed solely in Colorado. See Gonzales v. Raich, 545 U.S. 1, 32-33, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005) (locally grown and used marijuana is subject to federal regulation under the Commerce Clause). And Colorado law cannot supersede such federal laws. Id . at 29, 125 S.Ct. 2195. But, on the other hand, Congress cannot compel the *605 State of Colorado to "enact or administer" federal laws concerning such crimes in Colorado state courts. See New York, 505 U.S. at 148, 112 S.Ct. 2408.
¶ 21 A federal law can preempt a state law in three different ways. First, Congress can occupy an entire legislative field leaving " 'no room for the states to supplement it.' " In re Estate of MacAnally, 20 P.3d 1197, 1201 (Colo.App.2000) (quoting Greenwood Trust Co. v. Conley, 938 P.2d 1141, 1147 (Colo.1997) ). Second, a federal law can expressly preempt other laws. Id . Third, a state statute can conflict with federal law. Id .
¶ 22 Conflict preemption has two forms: impossibility and obstacle preemption. Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372-73, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000). Impossibility preemption exists "where it is impossible for a private party to comply with both state and federal law." Id . Obstacle preemption exists "where under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Id . at 373, 120 S.Ct. 2288 (internal quotation marks omitted).
¶ 23 Here, the prosecution limits its argument to obstacle preemption. But the particular wording of CSA § 903 -"there is a positive conflict [such that] the two cannot consistently stand together"-has been interpreted as foreclosing obstacle preemption:
Because Congress provided that the CSA preempted only laws positively conflicting with the CSA so that the two sets of laws could not consistently stand together, and omitted any reference to an intent to preempt laws posing an obstacle to the CSA, we interpret title 21 United States Code section 903 as preempting only those state laws that positively conflict with the CSA so that simultaneous compliance with both sets of laws is impossible.
Cnty. of San Diego v. San Diego NORML , 165 Cal.App.4th 798, 81 Cal.Rptr.3d 461, 481 (2008). We consider County of San Diego well-reasoned and follow it here.
¶ 24 "Congressional intent is determined primarily from the statute's plain language, and secondarily from the statute's legislative history." Greenwood Trust Co., 938 P.2d at 1147. The "positive conflict" phrase demands more than that the state law "stands as an obstacle to the accomplishment and execution" of the federal law. Boggs v. Boggs, 520 U.S. 833, 844, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997) (internal quotation marks omitted).
¶ 25 Therefore, based on the plain language of the CSA, we conclude that it cannot be used to preempt a state law under the obstacle preemption doctrine.[2] Nevertheless, we offer an alternative analysis of the obstacle preemption doctrine because no federal court has addressed the viability of this doctrine under the CSA.
¶ 26 Obstacle preemption analysis involves two steps. First, the purposes and intended effects of the relevant federal and state laws are determined. Second, those purposes and intended effects are compared to see if the state law impedes accomplishment of the federal purposes, which is the "ultimate touchstone in every [preemption] case." Wyeth v. Levine, 555 U.S. 555, 565, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009) (internal quotation marks omitted). At the second stage, to determine whether a sufficient obstacle exists, a court examines "the federal statute as a whole." Crosby, 530 U.S. at 373, 120 S.Ct. 2288. "For when the question is whether a Federal act overrides a state law, the entire scheme of the statute must of course be considered...." Id. (internal quotation marks omitted).
2. The Purposes and the Intended Effects of Federal and Colorado Marijuana Laws
a. Federal Marijuana Laws
¶ 27 The CSA lists marijuana as a schedule I controlled substance. 21 U.S.C. § 812 Schedule I(c)(10). Thus, as a matter of federal law, marijuana does not have a "currently *606 accepted medical use in treatment," it poses a "high potential for abuse," and it lacks "accepted safety for use ... under medical supervision." §§ 812(b)(1)(A)-(C). Physicians cannot prescribe marijuana as medicine under federal law, 21 C.F.R. § 1301.13 (2010). In other words, the CSA "designates marijuana as contraband for any purpose." Raich, 545 U.S. at 27, 125 S.Ct. 2195 (emphasis in original).
¶ 28 The CSA prohibits, among other acts, distributing a controlled substance. 21 U.S.C. § 841(a). Even so, 21 U.S.C. § 885(d)"carve[s] out a specific exemption for distribution of controlled substances by law enforcement officers." United States v. Cortes-Caban, 691 F.3d 1, 20 (1st Cir.2012). The purpose of section 885(d) is to "protect[ ] accepted law enforcement tactics ... in which officers handle and transfer drugs." Id. ; see also H.R.Rep. No. 91-1444 (1970), reprinted in 1970 U.S.C.C.A.N. 4566, 4625 (explaining that section 885(d)"exempts state and local officers when lawfully engaged in enforcing any law relating to controlled substances").
b. Colorado Marijuana Laws
¶ 29 For many years, Colorado law has criminalized the cultivation, possession, and distribution of marijuana. § 18-18-406, C.R.S.2013.
¶ 30 Colorado's voters created an exception when they approved the MM Amendment, which became effective on the Governor's proclamation. 2001 Colo. Sess. Laws 2379.[3] As indicated, MM Amendment section (2)(a) provides patients "an affirmative defense" to state prosecution. And MM Amendment section (2)(e) states that marijuana and paraphernalia "seized by state or local law enforcement officials from a patient ... in connection with the claimed medical use of marijuana shall be returned immediately" to the medical marijuana patient "upon the determination" of the prosecutor that the patient "is entitled to the protection contained in this section as may be evidenced ... by ... acquittal.
3. Applying the Test
¶ 31 Turning to the second step of the analysis and reading the CSA as a whole, we conclude that the return provision of the MM Amendment is not preempted, for two reasons. First, it does not require police officers to violate the CSA. Second, it does not require patients to do anything.
a. The Police Officers
¶ 32 The prosecution's argument that police officers who return marijuana to medical marijuana patients violate the CSA prohibition against distributing controlled substances is unpersuasive because it ignores the exemption in section 885(d). Three cases have rejected this argument, based on section 885(d). State v. Okun, 231 Ariz. 462, 296 P.3d 998, 1002 (Ariz.Ct.App.2013) ("This provision immunizes law enforcement officers such as the Sheriff from any would-be federal prosecution for complying with a court order to return Okun's marijuana to her."); City of Garden Grove v. Superior Court , 157 Cal.App.4th 355, 68 Cal.Rptr.3d 656, 678 (2007) ; State v. Kama , 178 Or.App. 561, 39 P.3d 866, 868 (2002).
¶ 33 As the court in City of Garden Grove explained:
[D]istribution of a controlled substance is generally prohibited under 21 U.S.C. § 841(a)(1), but that section does not apply to persons who regularly handle controlled substances in the course of their professional duties. For example, in United States v. Feingold (9th Cir.2006) 454 F.3d 1001, 1008, the court held that 21 U.S.C. § 841(a)(1) could only be applied to a doctor if, in distributing a controlled substance, he intended "to act as a pusher rather than a medical professional." (Relying on United States v. Moore, [423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975) ] ).
By analogy, it would stand to reason that the only way a police officer could be found *607 in violation of 21 U.S.C. § 841(a)(1) for distributing a controlled substance is if he or she intended to act as a drug peddler rather than a law enforcement official. In this case, it is quite obvious the police do not want to give Kha his marijuana back at all, let alone have him use it for illicit purposes. They are acting under the compulsion of a lawful court order. Therefore, we cannot see how anyone could regard compliance with this order a violation of 21 U.S.C. § 841(a)(1).
Assuming someone could, it seems to us clear the police would be entitled to immunity under 21 U.S.C. § 885(d).
68 Cal.Rptr.3d at 681. We consider this case well-reasoned, and follow it here.
¶ 34 Because City of Garden Grove is not binding authority, however, we amplify its analysis as follows:
• The Colorado Springs police officers who returned the marijuana were "duly authorized officer[s]" of a "political subdivision" of the state of Colorado.
• Marijuana is a "controlled substance," and the MM Amendment fits within "any law relating" to it. See, e.g., United States v. Gonzales, 520 U.S. 1, 5, 117 S.Ct. 1032 [137 L.Ed.2d 132] (1997) ("[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.' " (citation omitted)); Friedman v. Sebelius, 686 F.3d 813, 820 (D.C.Cir.2012) ("The key phrase in this provision is 'relating to,' " the " 'ordinary meaning of [which] is a broad one-"to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." ' " (citation omitted)). Had Congress intended a narrower immunity, it could have used limiting language, such as "enforcement of this Act" or "enforcement of any criminal law relating to controlled substances."
• The officers were engaged in "enforcement" because they acted under a court order that implemented a mandatory provision of the MM Amendment. See Black's Law Dictionary 608 (9th ed. 2009) ("enforcement" means "[t]he act or process of compelling compliance with a law, mandate, command, decree, or agreement"); cf. Falk v. Perez, 2013 WL 5230632 (N.D.Ill.2013) ("officers enforcing court orders should not be charged with evaluating the legality of the order, but simply with executing it"); Miller v. City of Anderson, 777 N.E.2d 1100, 1104 (Ind.App.2002) (Enforcement means "those activities in which a government entity or its employees compel or attempt to compel the obedience of another to laws, rules or regulations, or sanction or attempt to sanction a violation thereof.").[4]
• And for the same two reasons, the officers were "lawfully engaged." Prosecutions of police officers under the CSA where a defense based on section 885(d) has been rejected involve circumstances where the defendant officers were acting outside of their prescribed duties.[5]
*608 Here, the prosecution does not dispute that the action the court ordered was part of these officers' duties.
¶ 35 The dissent's analysis that because the return provision is preempted by the CSA prohibition against distribution, police officers returning marijuana under this provision are not "lawfully engaged" for purposes of the section 885(d) exemption, does not persuade us. In our view, section 885(d) must be used in the preemption calculus, not disregarded based on a premature preemption conclusion. This is so because preemption analysis "requires interpreting the full [legislative] scheme [,] ... not merely reading each word of the statute in isolation." Comm'ns Import Export S.A. v. Republic of Congo, 916 F.Supp.2d 48, 56 (D.D.C.2013).
¶ 36 In the CSA, Congress not only prohibited distribution of controlled substances, among other things, but it also created an exemption for law enforcement officers who are lawfully engaged in the enforcement of laws "relating to" controlled substances. Reading the prohibition against distribution in isolation would ignore congressional recognition in section 885(d) that the prohibition is not absolute. Hence, we examine how courts have interpreted this section, and compare those interpretations to the officers' conduct here.
¶ 37 Courts have acknowledged the potential application of section 885(d) to "reverse sting" operations, where undercover law enforcement officers sell controlled substances. See, e.g., Cortes-Caban, 691 F.3d at 21 ("This provision protects accepted law enforcement tactics such as sting or reverse-sting operations in which officers handle and transfer drugs." (footnote omitted));[6] United States v. Mustakeem, 759 F.Supp. 1172, 1176 (W.D.Pa.1991) (discussing DEA guidelines on reverse sting operations, which do not require a court order authorizing the operation). Placing drugs into criminals' hands is inimical to the policies of the CSA.[7] Here, to bolster its obstacle preemption argument, the prosecution says the same about placing marijuana in the hands of a patient based on a mandatory return order.
¶ 38 Therefore, we conclude that the officers did not violate the CSA by complying with the court's order.[8] And because they did not violate the CSA, their conduct could not be an impediment to accomplishing its objectives.
b. Crouse
¶ 39 In contrast to the prosecution's detailed arguments for obstacle preemption based on the police officers' returning marijuana, the prosecution's appellate briefs contain only general references to the patient's role in this process and conclusory statements about the consequences. Because the prosecution has not offered a meaningful alternative *609 preemption argument based only on the patient's role, we need not address whether preemption would be required solely on that basis. See, e.g., Meridian Ranch Metro. Dist. v. Colo. Ground Water Comm'n, 240 P.3d 382, 390 (Colo.App.2009) ("Because, however, the Metro Districts did not develop any argument with respect to this point in their briefs, we do not consider it.").
¶ 40 But we will take up this argument, for two reasons. First, the dissent does so, explaining that the prosecution sufficiently raised the issue. Second, if the dissent is correct, addressing it provides a more complete foundation for further appellate review.
¶ 41 Whether the CSA preempts a state's law that permits, but does not require, its citizens to engage in conduct that the CSA prohibits has divided other courts. Compare Ter Beek v. City of Wyoming, 297 Mich.App. 446, 823 N.W.2d 864, 872 (2012) (no preemption); Qualified Patients Ass'n v. City of Anaheim, 187 Cal.App.4th 734, 115 Cal.Rptr.3d 89, 109 (same), with Emerald Steel Fabricators, Inc. v. BOLI, 348 Or. 159, 230 P.3d 518 (2010) (preemption).[9]
¶ 42 The MM Amendment does not require patients to do anything. Here, Crouse chose to invoke the return provision, and he accepted the returned marijuana. For this reason, we conclude that the MM Amendment is not preempted merely because it permits patients to engage in conduct involving marijuana which the CSA prohibits.
¶ 43 Ter Beek informs our analysis. There, as here, the Michigan statute did not "exempt qualified medical-marijuana users from federal prosecutions." Compare Ter Beek, 823 N.W.2d at 873, with MM Amendment, § 14(2)(a) (patient "charged with a violation of the state's criminal law ... will be deemed to have established an affirmative defense" (emphasis added)). And the Ter Beek court observed, as have we, that "Congress cannot require the states to enforce federal law." 823 N.W.2d at 873 (citing Printz v. United States, 521 U.S. 898, 924, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), and New York, 505 U.S. at 166, 112 S.Ct. 2408 ). On these grounds, the court concluded that "while Congress can criminalize all uses of medical marijuana ... Michigan is not required to criminalize all medical uses of marijuana and the immunity afforded to qualified patients for the medical use of marijuana ... [by the Michigan statute] is not preempted" as an obstacle to the purposes and objectives of the CSA. Id . at 873-74.
¶ 44 Similarly, the court's decision in Qualified Patient Ass'n begins by recognizing that "the unstated predicate" of the obstacle preemption argument is that "the federal government is entitled to conscript a state's law enforcement officers into enforcing federal enactments, over the objection of that state." 115 Cal.Rptr.3d at 108 (internal quotation marks omitted). The court rejected obstacle preemption, explaining that if the federal government is concerned that "patients may be more likely to violate federal law if the additional deterrent of state liability is removed," then "the proper response-according to New York and Printz -is to ratchet up the federal regulatory regime, not to commandeer that of the state." Id . (internal quotation marks omitted).
¶ 45 Both Ter Beek and Qualified Patients Ass'n addressed their states' respective immunity provisions for medical marijuana patients. But those courts' rationales for rejecting obstacle preemption apply equally to the return provision at issue here. Immunity *610 provisions allow patients to possess and use medical marijuana without fear of state prosecution. Possession and use are no different whether the patient lawfully grew the marijuana, purchased it from a state-approved source, or obtained its return from law enforcement through requesting a court order. Nor would any resulting tension with the CSA be different.[10]
¶ 46 Preempting a state law or constitutional provision immunizing medical marijuana patients from state prosecution would in effect recriminalize their possession and use of marijuana. Preempting the return provision of the MM Amendment would allow state officers to keep seized marijuana. But federalism prevents the federal government from requiring states to seize and hold marijuana, just as this principle prevents the federal government from requiring states to criminalize possession and use of marijuana. See Printz, 521 U.S. at 933, 117 S.Ct. 2365 (duty imposed on state law enforcement agencies to conduct criminal background checks on prospective firearms purchasers is unconstitutional). Thus, obstacle preemption does not allow the federal government to accomplish indirectly that which it would be unable do directly. Cf. United States v. Smith, 47 F.3d 681, 684 (4th Cir.1995) ("The government should not be allowed to do indirectly what it cannot do directly."); Reale v. Bd. of Real Estate Appraisers, 880 P.2d 1205, 1207 (Colo.1994) ("We cannot subscribe to a legislative practice that allows one branch of the government to limit constitutionally established 'executive' offices and thus to do indirectly that which they are prohibited from doing directly.").
¶ 47 Accordingly, we conclude that the return provision of the MM Amendment is not subject to obstacle preemption.
IV. Conclusion
¶ 48 We affirm the trial court's order returning the marijuana and the marijuana plants to defendant.
JUDGE DUNN concurs.
JUDGE BERNARD concurs in part and dissents in part.

The federal government has never challenged the MM Amendment. The parties filed supplemental briefs in response to the court's question whether the preemption analysis should include the most recent statement by the United States Department of Justice concerning enforcement of the CSA against conduct involving marijuana that is now permitted under state law. Those briefs did not cite authority, nor have we found any, suggesting that we should do so.

The parties have not cited, nor have we found, any useful legislative history on section 903.

Effective December 10, 2012, see 2013 Colo. Sess. Laws 3291, Colorado's voters amended our constitution to state that "the use of marijuana should be legal for persons twenty-one years of age or older." Colo. Const. art. XVIII § 16 (1)(a). This amendment does not contain a return provision.

We do not share the dissent's comfort in statements about section 885(d) by the court in United States v. Rosenthal, 266 F.Supp.2d 1068 (N.D.Cal.2003). On appeal, the Ninth Circuit endorsed the court's statement that "Rosenthal was implementing or facilitating the purpose of the [medical marijuana] statute; he was not compelling anyone to do or not to do anything." 454 F.3d 943, 948 (9th Cir.2006). But then it added:
Kama is not inconsistent with such a theory. In that case, the state law mandated the return of marijuana to the individual from whom the marijuana had been seized, and therefore the officers in question were "enforcing" the state law that required them to deliver the marijuana to that individual because he had a state-law right to its return. 178 Or.App. at 564-65, 39 P.3d 866. Here, in contrast, the state law does not give any person a right to obtain medical marijuana from any particular source, and the Oakland Ordinance does not mandate that Rosenthal manufacture marijuana.
454 F.3d at 948. Had the circuit court intended to also endorse the district court's view-adopted by the dissent-that the 885(d) immunity "cannot reasonably be read to cover acting pursuant to a [state] law which itself is in conflict" with the CSA, 266 F.Supp.2d at 1079, it could have said so. Instead, it acknowledged Kama .

See, e.g., United States v. Wright, 634 F.3d 770, 775-77 (5th Cir.2011) (rejecting defense under section 885(d) as to deputy sheriff found guilty of attempting to possess with the intent to distribute cocaine); United States v. Sanchez-Berrios, 424 F.3d 65, 71-72 (1st Cir.2005) (affirming the convictions of three officers for conspiring to distribute over five kilograms of cocaine); United States v. Serrano-Beauvaix, 400 F.3d 50, 52 (1st Cir.2005) (affirming convictions of an officer and former officer for conspiracy to distribute over five kilograms of cocaine); United States v. Reeves, 730 F.2d 1189, 1195-96 (8th Cir.1984) (rejecting defense under section 885(d) as to sheriff and his deputy found guilty of conspiracy to distribute and distribution of marijuana).

The court also noted that this section protects "the transfer of suspected drugs to DEA laboratory agents for analysis, or to a clerk of court in the course of presenting evidence at trial, none of which could give rise to prosecution under § 841." 691 F.3d at 21 (footnote omitted).

Relevant findings and declarations include: a "major portion" of drug trafficking occurs in interstate and foreign commerce; local drug trafficking that is not "an integral part of the interstate ... flow" of drugs still has "a substantial and direct effect upon interstate commerce"; "[l]ocal distribution and possession of controlled substances" swells interstate drug trafficking; it is not feasible to distinguish between interstate and intrastate distribution; and "[f]ederal control of the intrastate incidents" of drug trafficking "is essential to the effective control of ... interstate incidents" of drug trafficking. 21 U.S.C. §§ 801(3) -(6).

Further, even if the patient who received returned marijuana could be prosecuted for violating the CSA's ban on possession, the police officers who returned it would not be culpable on an aider and abettor theory under 18 U.S.C. § 2. As the court observed in City of Garden Grove, these officers' only intent was to do what the court had ordered, despite their misgivings. See also Qualified Patients Ass'n v. City of Anaheim, 187 Cal.App.4th 734, 115 Cal.Rptr.3d 89, 107 (2010) ( "[G]overnmental entities do not incur aider and abettor or direct liability by complying with their obligations under the state medical marijuana laws.").

Emerald Steel, on which the dissent relies, is distinguishable in two ways. First, the civil employment dispute did not require the court to include section 885(d) in its preemption analysis, nor did the court do so. Second, in allowing the employer to raise a preemption defense in a state enforcement action alleging disability discrimination against a medical marijuana patient, the court acted consistent with United States Supreme Court precedent that recognizes state law can neither prohibit private action that federal law allows or require private action that federal law prohibits. See, e.g., Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 367, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000) (state law "penalizes some private action that the federal Act (as administered by the President) may allow"); Geier v. Am. Honda Motor Co., Inc., 529 U.S. 861, 875, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000) (requirement that auto manufacturers install air bags conflicted with federal regulations that "deliberately provided the manufacturer with a range of choices among different passive restraint devices").

State v. Ehrensing, 255 Or.App. 402, 296 P.3d 1279, 1283-84 (2013), also cited in the dissent, does not support a contrary conclusion because the court limited its holding to "(1) express statutorily prescribed preconditions of the particularized OMMA 'return' provision, ORS 475.323(2), were not satisfied here; and (2) the omnibus 'evidence return' provisions-and, specifically, ORS 133.643-do not authorize return of items whose possession would be unlawful under either state or federal law." Here, the prosecution does not dispute that Crouse has satisfied the return provision of our Constitution, and that provision does not depend on lawful possession. Further, Ehrensing expressly eschewed preemption analysis because "[p]reemption principles are implicated only if defendant is, in fact, entitled under operative Oregon statutes to return of the marijuana. That is, if, as a matter of Oregon law, defendant has no such entitlement, the matter is concluded and preemption is inapposite." Id. at 1283.