*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TCF NATIONAL BANK,

        Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

        Defendant-Appellee.

FOR PUBLICATION
December 12, 2019
9:00 a.m.

No. 344892
Court of Claims
LC No. 16-000191-MT

---

FLAGSTAR BANCORP, INC.,

        Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

        Defendant-Appellee.

No. 344906
Court of Claims
LC No. 16-000273-MT

---

Before: SWARTZLE, P.J., and MARKEY and REDFORD, JJ.

PER CURIAM.

In these consolidated appeals,[1] TCF National Bank (TCF) and Flagstar Bancorp, Inc. (Flagstar), appeal by right the decisions of the Court of Claims granting the Department of Treasury summary disposition under MCR 2.116(C)(10) and affirming its franchise tax assessments derived by the Department based on its computation method for determining the franchise tax applicable to financial institutions under the Michigan Business Tax Act (MBTA), MCL 208.1101 *et seq*. For the reasons stated herein, we reverse.

---

[1] *TCF Nat'l Bank v Dep't of Treasury*, unpublished order of the Court of Appeals, entered August 16, 2018 (Docket Nos. 344892 and 344906).

## I. BACKGROUND

### A. TCF

TCF is a federally chartered national bank with branches in Michigan and a wholly-owned subsidiary of TCF Financial Corporation, a Delaware holding company headquartered in Minnesota. It filed its Michigan Business Tax (MBT) return as the designated member of a unitary business group (UBG)[2] comprised of TCF Financial Corporation and its subsidiaries as permitted under the MBTA. For its MBT returns for the tax years in dispute, TCF identified each member of the UBG and on Form 4580 identified "elimination" entities used to account for intramember investments and adjustments for negative capital before eliminations. Using this method, TCF reported the UBG's total and ending taxable net capital, and remitted franchise taxes on behalf of the UBG.

The Department initiated a business tax audit of TCF for the period between January 1, 2008 and December 31, 2009, to determine any difference between the correct franchise tax and TCF's reported tax liability. In computing the UBG's "net capital," which is the taxpayer's tax base for purposes of the franchise tax, the Department first determined each member's equity capital using the equity capital TCF reported on its federal return for each UBG member. If applicable, the Department then subtracted a member's investment in another member from the investing member's equity capital. "Goodwill" and "government obligations" were then subtracted from each member's remaining equity capital, resulting in each individual member's net capital. Next, the Department averaged each member's net capital for the current tax year by adding together the entity's net capital for the current tax year with its net capital for the preceding four tax years and divided that sum by five. If the member existed for less than five years the Department added the net capital for the number of years in existence and divided the sum by the number of years of its existence. The Department took the averaged net capital for each member and added the amounts together to derive the UBG's net capital. Using this methodology to determine TCF's tax base, the audit resulted in a franchise tax deficiency of $558,794.

---

[2] The MBTA defines UBG as follows:

"Unitary business group" means a group of United States persons, other than a foreign operating entity, 1 of which owns or controls, directly or indirectly, more than 50% of the ownership interest with voting rights or ownership interests that confer comparable rights to voting rights of the other United States persons, and that has business activities or operations which result in a flow of value between or among persons included in the unitary business group or has business activities or operations that are integrated with, are dependent upon, or contribute to each other. For purposes of this subsection, flow of value is determined by reviewing the totality of facts and circumstances of business activities and operations. [MCL 208.1117(6).]

After the Department issued its Final Assessment for the deficiency, TCF requested an informal conference to contest the calculation of its net capital. TCF challenged the Department's averaging methodology on the ground that the Department "inappropriately diluted" the investment elimination. TCF argued that the eliminations were not subject to averaging. The hearing referee disagreed. The Department accepted the hearing referee's recommendation and upheld its determination that the tax due for the period ending December 31, 2008 amounted to $323,872.

That prompted TCF to file its complaint alleging that the Department imposed an unlawful assessment and violated its equal protection rights by calculating the UBG's net capital as to each member, rather than calculating it for a "single person," i.e., the UBG, by failing to wholly eliminate investments into subsidiaries, in contravention of MCL 208.1511 and MCL 208.1265. TCF alleged that this treatment discriminated between taxpayers with subsidiaries and taxpayers without subsidiaries. Eventually, the parties filed cross-motions for summary disposition under MCR 2.116(C)(10). The Department asserted that it calculated TCF's tax base consistent with the applicable statutes. TCF argued that the Department's calculation conflicted with the applicable statutes because it should have added its net capital for the tax years 2004 through 2008 and divided that number by five, instead of averaging the net capital of each UBG member individually over the four-year period before 2008, depending on each member's years of existence, and then adding those averages together. The Court of Claims ruled in favor of the Department.

The Court of Claims opined that a UBG is not a separate and distinct legal entity that keeps its own books and records. But because UBG individual members do, MCL 208.1265(1)'s reference to "the financial institution's net capital" "cannot refer to a UBG's net capital, despite that 'financial institution' may refer to a UBG." The Court of Claims interpreted MCL 208.1265(1) and (2) as referring to an individual member's net capital because it interpreted MCL 208.1265(2) as not referring to a UBG's net capital. The Court of Claims therefore concluded that the Department correctly applied MCL 208.1265(2) to the individual UBG members. The Court of Claims stated that, because a UBG is the creation of tax law, a UBG "has never been 'in existence' on its own," and if it interpreted the first sentence of MCL 208.1265(2) as referring to a UBG, the second sentence would be rendered nugatory. It concluded that the Department correctly interpreted MCL 208.1265(2) by applying it to individual UBG members which have separate and distinct legal existence.

## B. FLAGSTAR

Flagstar, headquartered in Troy, Michigan, is a holding company for Flagstar Bank and serves as the designated member of a 13-member UBG. In 2013, the Department initiated a business tax audit of Flagstar's MBT returns to determine the difference, if any, between Flagstar's reported and correct franchise tax liability for tax years covered by January 1, 2008 through December 31, 2011. To determine the UBG's "net capital," or tax base for purposes of the franchise tax, the Department identified each individual UBG member's equity capital, averaged each entity's net capital, then determined the UBG's net capital by adding each of the members' averaged net capital. Using this methodology, the Department computed and assessed additional MBT liability which reduced the refund owed to Flagstar from approximately $10.2 million to $7,026,404.

Flagstar disputed the calculation of net capital for the 2008 tax year and requested an informal conference on the ground that the amounts that Flagstar reported were consistent with the statute; whereas, the Department's methodology derived incorrect amounts. Flagstar argued that one of its members, created wholly out of the equity of the parent, should not have been subject to a three-year average for its years in existence; rather, it should have been subject to the UBG's five-year average. The hearing referee disagreed. The Department affirmed the referee's recommendation which prompted Flagstar to file its complaint in the Court of Claims alleging that the Department unlawfully assessed Flagstar for tax years 2008 through 2010 by averaging the net capital of each individual UBG member and adding those averages together to calculate the UBG's net capital without eliminating investments from one UBG member to another.

The parties filed cross-motions for summary disposition under MCR 2.116(C)(10), each arguing that their calculation of net capital comported with the MBTA's financial institution franchise tax statutory provisions. The Court of Claims ruled in the Department's favor.

Similar to its ruling in TCF's case, the Court of Claims based its decision on its conclusion that:

> the Court cannot simply ignore that statutes are to be read as a whole and the Legislature clearly intended for "the financial institution's net capital" as used in MCL 208.1265(1) to not refer to a UBG's net capital; the fact that defining "financial institution" in MCL 208.1265(2) as a UBG renders the second sentence of that statute nugatory; nor, particularly, the fact that the Legislature's use of "financial institution" in MCL 208.1265(2) is inconclusive and can refer to either a UBG or a UBG's individual member, see MCL 208.1261(f)(ii) and (iii). Thus, in light of the evidence showing the Legislature's intent for "financial institution" in MCL 208.1265(2) to refer to a UBG's individual member, the Court is unpersuaded that the Legislature's use of "the" instead of "a" mandates a different conclusion.

## II. STANDARD OF REVIEW

We review de novo a court's decision on a motion for summary disposition under MCR 2.116(C)(10). *GMC v Dep't of Treasury*, 290 Mich App 355, 369; 803 NW2d 698 (2010). Summary disposition is proper if, after viewing all admissible evidence in a light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *West v GMC*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. (citation omitted). We also review de novo questions of statutory interpretation. *GMC*, 290 Mich App at 369.

## III. ANALYSIS

TCF and Flagstar appeal on the ground that the Court of Claims' erred by affirming the Department's methodology for determining a UBG's tax base for purposes of the franchise tax because that methodology conflicted with the applicable statutes resulting in vastly overstating

their respective UBG's net capital. TCF and Flagstar contend that the Department erred by not fully eliminating member investments, by averaging each individual UBG member's net capital over its individual years in existence, and then by adding each member's averaged net capital to derive the UBG's net capital, contrary to MCL 208.1265(2), which requires that the UBG's net capital be averaged over its years of existence. We agree.

TCF and Flagstar are the designated members of UBGs subject to the franchise tax and they each filed a combined return for their respective UBG for the tax years at issue. They dispute how the tax base of a financial institution is calculated when the taxpayer financial institution is a UBG. The issue before us involves a legal question pertaining to statutory interpretation.

Proper statutory interpretation requires examination of the specific statutory language to determine the legislative intent. *Universal Underwriters Ins Group v Auto Club Ins Ass'n*, 256 Mich App 541, 544; 666 NW2d 294 (2003). "If the language is clear and unambiguous, the plain meaning of the statute reflects the legislative intent and judicial construction is not permitted." *Id*. (quotation marks and citation omitted). In *Detroit Pub Sch v Conn*, 308 Mich App 234, 247-248; 863 NW2d 373 (2014), this Court explained:

> When interpreting a statute, our goal is to give effect to the intent of the Legislature. The language of the statute itself is the primary indication of the Legislature's intent. If the language of the statute is unambiguous, we must enforce the statute as written. This Court reads the provisions of statutes reasonably and in context, and reads subsections of cohesive statutory provisions together.
>
> . . . [N]othing may be read into a statute that is not within the intent of the Legislature apparent from the language of the statute itself. Courts may not speculate regarding legislative intent beyond the words expressed in a statute. Hence, nothing may be read into a statute that is not within the manifest intent of the Legislature as derived from the act itself. [Quotation marks and citations omitted.]

In *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009), our Supreme Court explained that correct interpretation of a statutory scheme requires (1) reading the statute as a whole, (2) reading the statute's words and phrases in the context of the entire legislative scheme, (3) considering both the plain meanings of the critical words and phrases along with their placement and purpose within the statutory scheme, and (4) interpreting the statutory provisions "in harmony with the entire statutory scheme." "Moreover, courts must pay particular attention to statutory amendments, because a change in statutory language is presumed to reflect either a legislative change in the meaning of the statute itself or a desire to clarify the correct interpretation of the original statute." *Id*.

Chapter 2B of the MBTA covers taxation of financial institutions. Through December 31, 2011, the MBTA defined the term "taxpayer" as "a person or a unitary business group liable for a tax, interest, or penalty under this act." MCL 208.1117(5). MCL 208.1261(f) defines the term "financial institution" as any of the following:

(*i*) A bank holding company, a national bank, a state chartered bank, an office of thrift supervision chartered bank or thrift institution, a savings and loan holding company other than a diversified savings and loan holding company as defined in 12 USC 1467a(a)(F), or a federally chartered farm credit system institution.

(*ii*) Any person, other than a person subject to the tax imposed under chapter 2A [Taxation of Insurance Companies], who is directly or indirectly owned by an entity described in subparagraph (*i*) and is a member of the unitary business group.

(*iii*) A unitary business group of entities described in subparagraph (*i*) or (*ii*), or both.

The plain language of this definitional provision, establishes that a "financial institution" may be a type of bank, or an entity owned by such a bank that is a member of the UBG, or a UBG made up of either or both of these two types of entities.

The MBTA imposes a "franchise tax" upon a financial institution under MCL 208.1263 which provides:

(1) Every financial institution with nexus in this state as determined under [MCL 208.1200] is subject to a franchise tax. The franchise tax is imposed upon the tax base of the financial institution as determined under [MCL 208.1265] after allocation or apportionment to this state, at the rate of 0.235%.

(2) The tax under this chapter is in lieu of the tax levied and imposed [for business income tax and modified gross receipts tax].

MCL 208.1265 prescribes the methodology for computing the tax base of "a financial institution," as follows:

(1) For a financial institution, tax base means the financial institution's net capital. Net capital means equity capital as computed in accordance with generally accepted accounting principles less goodwill and the average daily book value of United States obligations and Michigan obligations. If the financial institution does not maintain its books and records in accordance with generally accepted accounting principles, net capital shall be computed in accordance with the books and records used by the financial institution, so long as the method fairly reflects the financial institution's net capital for purposes of the tax levied by this chapter. Net capital does not include up to 125% of the minimum regulatory capitalization requirements of a person subject to the tax imposed under chapter 2A.

(2) Net capital shall be determined by adding the financial institution's net capital as of the close of the current tax year and preceding 4 tax years and dividing the resulting sum by 5. If a financial institution has not been in existence for a period of 5 tax years, net capital shall be determined by adding together the financial

institution's net capital for the number of tax years the financial institution has been in existence and dividing the resulting sum by the number of years the financial institution has been in existence. For purposes of this section, a partial year shall be treated as a full year.

(3) For a unitary business group of financial institutions, net capital calculated under this section does not include the investment of 1 member of the unitary business group in another member of that unitary business group.

Under MCL 208.1511, a UBG must file a return in relevant part as follows:

a unitary business group shall file a combined return that includes each United States person, other than a foreign operating entity, that is included in the unitary business group. Each United States person included in a unitary business group or included in a combined return shall be treated as a single person and all transactions between those persons included in the unitary business group shall be eliminated from the business income tax base, modified gross receipts tax base, and the apportionment formula under this act. If a United States person included in a unitary business group or included in a combined return is subject to the tax under chapter 2A or 2B, any business income attributable to that person shall be eliminated from the business income tax base, any modified gross receipts attributable to that person shall be eliminated from the modified gross receipts tax base, and any sales attributable to that person shall be eliminated from the apportionment formula under this act.

"It is well established that different provisions of a statute that relate to the same subject matter are in *pari materia* and must be read together as one law." *Ter Beek v City of Wyoming*, 297 Mich App 446, 462; 823 NW2d 864 (2012). Accordingly, we must read these provisions together in harmony. *Id*. Read together, MCL 208.1261(f), MCL 208.1263, and MCL 208.1265 unambiguously indicate that the Legislature intended the term "financial institution" to mean a UBG when a UBG taxpayer's franchise tax liability is at issue. The Legislature specified in MCL 208.1263 that the franchise tax is imposed upon "*the* tax base of *the* financial institution" (emphasis added). The Legislature's use of the singular article "the" plainly signifies that the tax applies to a singular tax base of a singular taxpayer. The Legislature's inclusion of a UBG in its alternative definitions of "financial institution" in MCL 208.1261(f), informs the interpretation and understanding of the other statutory provisions. Particularly, regarding MCL 208.1265, the specified methodology applies to the single UBG taxpayer that files the return in the same manner as when a single individual financial institution is the taxpayer filing the return. To give full effect to the Legislature's intent as expressed by its definition of "financial institution," therefore, when a UBG is the taxpayer, the term "financial institution" in the methodology section must be read as referring to the UBG itself because no clear contrary legislative intent appears to exist.

MCL 208.1265 specifies how a UBG's net capital must be determined and how the averaging provision applies to a UBG. When a UBG taxpayer is involved, the UBG's tax base means the UBG's net equity capital computed under generally accepted accounting principles. The UBG's net capital is determined by adding the UBG's net capital as of the close of the

current tax year and preceding four tax years and dividing the resulting sum by five.[3]   MCL 208.1265(1) and (2).  Because MCL 208.1511 requires treating UBG members as one taxpayer for filing purposes, the UBG's net capital is an aggregate of its members' net capital for any given tax year.  To derive each year's correct aggregate amount, the net capital of individual UBG members must be determined and added together.  However, to avoid double counting net capital, MCL 208.1265(3) directs that, for a UBG of financial institutions, the UBG's net capital calculation does not include any investment of a UBG member in another member of the UBG.  Thus, all intramember investments must be determined and eliminated for the UBG's net capital calculation.  The elimination process requires examination at the member level of all investment transactions by members among UBG members so that all investments by any member of the UBG in any other member of that UBG are not included in the net capital calculation for the UBG.

When properly read together, MCL 208.1261(f), MCL 208.1263, and MCL 208.1265, require that a UBG's tax base may not be derived from applying the MCL 208.1265 averaging formula to each individual member and then adding those calculations together.  Rather, the individual member net capital determinations, after the elimination adjustments for intramember investments, when added, equal the UBG's net capital which is the UBG's tax base for franchise taxation purposes.  The averaging provision under MCL 208.1265(2) applies to the UBG.  Had the Legislature intended application of this provision to each individual UBG member, it could have expressly stated so, as it made clear with respect to net capital and a member's investment in another member of the UBG.  The Legislature did not do so and such a requirement may not be read into the statute.

The Department, therefore, misinterpreted the statutory scheme and erred by applying the MCL 208.1265 averaging formula to the individual members and then adding the sums together to derive the UBG's net capital.  Also, we find unpersuasive the Department's argument that the averaging must occur at the member level on the ground that a UBG has no independent existence and, thus, its years in existence cannot be measured.  UBGs exist for tax purposes, and the duration of a UBG's existence is capable of measurement.  Under MCL 208.1265(2), the UBG's net capital must be averaged over a five-year period or a lesser period if the UBG has not existed for that period.

The Court of Claims erred by affirming the Department's decisions.  We find that the Court of Claims based its decision on an erroneous interpretation of the meaning of the statutory term "financial institution," because the statute plainly defines a UBG as a financial institution which, pursuant to the statutory scheme, under MCL 1265(1) must be understood as "*the* financial institution" whose net capital must be derived pursuant to MCL 208.1265 for franchise taxation purposes.  The Court of Claims' analysis cannot be reconciled with the plain statutory language.  Although UBGs are not separate and distinct legal entities like other business entities,

---

[3] If the UBG did not exist for a period of five years, then net capital is determined by adding the UBG's net capital for the number of tax years it existed and dividing the resulting sum by the number of years of the UBG's existence.  MCL 208.1265(2)

they do exist for purposes of Michigan business tax law.  See *D'Agostini Land Co LLC v Dep't of Treasury*, 322 Mich App 545, 551; 912 NW2d 593 (2018).  In *D'Agostini*, this Court explained:

> To qualify as a unitary business group, one member of the proposed group must own or control more than 50% of the other members and there must be a sufficient connection between the members to meet one of two relationship tests. If a group of businesses qualifies as a unitary business group in a particular tax year, then the group must file a unitary tax return for that year.  Michigan, like several other states, has adopted the unitary-business-group concept in an effort to measure more accurately the related group's taxable activities in the state.
>
> Unitary business groups were not taxed as such under the SBT.  When it enacted the MBT, the Legislature added "unitary business group" to the list of persons who qualify as a "taxpayer" under state law.  [*Id*. at 551-552 (citations omitted).]

The Court of Claims' declaration that UBGs do not exist and its conclusion that the MCL 208.1265(2) averaging provision must be applied at the member level run contrary to the Legislature's intent that UBGs must be recognized and treated as a single taxpayer, subject to taxation under the MBTA.  Accordingly, the Department lacked entitlement to summary disposition in both cases and TCF and Flagstar are entitled to reversal and recalculation of their franchise taxes for the disputed tax years.

Reversed and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Jane E. Markey
/s/ James Robert Redford